# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF VIRGINIA

## Alexandria Division

| | | |
|---|---|---|
| Arthur Lee Sanford, | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | 1:18cv303 (LMB/TCB) |
| | ) | |
| Harold W. Clarke, | ) | |
| Respondent. | ) | |

## MEMORANDUM OPINION

Arthur Lee Sanford, a Virginia inmate proceeding pro se, has filed a petition for a writ of

habeas corpus, pursuant to 28 U.S.C. § 2254, challenging the constitutionality of his conviction

for second degree murder in the Circuit Court for the City of Newport News. Before the Court is

respondent's Motion to Dismiss the petition [Dkt. No. 7], to which petitioner has filed a

response. [Dkt. No. 12] For the following reasons, the Motion to Dismiss will be granted.

## I. Background

Following a jury trial, Sanford was convicted on January 11, 2013, and received a

sentence of forty (40) years incarceration. Case No. CR11000078-00. In the Final Order he

issued in Sanford's state habeas corpus petition, the trial judge described the facts underlying the

conviction as follow:[1]

> On December 3, 2003, Petitioner was living in an apartment with
> his girlfriend, Towanna Brinkley. [FN] Dawn Uzzle, who lived in
> an adjacent apartment, saw and heard Petitioner and Brinkley
> return home during the afternoon or early evening hours. At
> approximately 5:30 p.m., Uzzle heard a series of loud thumps and
> the muffled screaming of a woman. At the same time, another

---

[1]Because a federal court on habeas review of a state conviction must defer to findings of fact made by state trial and appellate courts, 28 U.S.C. § 2254(d), it is appropriate to look to the state court's recitation of the salient facts. The Supreme Court of Virginia refused further review of the Final Order without comment; therefore, the trial court's reasoning is imputed to it. See Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991).

neighbor, Cynthia Jones, heard a woman screaming, "Help me, help me, help me." Uzzle also noticed that her living room closet door, which backed up to a similar closet in Petitioner's apartment, began "slamming on the hinges" as a result of the force applied on the wall from Petitioner's side of the wall.

> FN: The crime underlying this habeas matter was committed in 2003, but was deemed a "cold case" by the Newport News Police Department. (10/31/2012 Tr. at 383). Petitioner was tried in 2012.

Uzzle called 911 and watched to see if anyone would exit petitioner's apartment, but no one did. The police soon arrived and knocked on Petitioner's apartment door, but no one responded, and they left.

Cartell Brinkley, the victim's adult son, arrived shortly after the police had left and knocked on Petitioner's door, but no one answered. Brinkley remained in the area for " a couple of hours," and kept "going back and forth checking in," but no one responded from inside Petitioner's apartment.

Petitioner called Corey Ridley sometime after midnight and asked to repay a $40 debt. As Ridley drove toward Petitioner's apartment, Petitioner called him again. When Ridley arrived, he knocked on Petitioner's apartment door, and Petitioner opened it. The two men walked partially into the dark living room before entering the kitchen, which was only illuminated by "a little dim light." Ridley saw two twenty dollar bills on the kitchen counter, which appeared to have blood on them. When Ridley asked about the "red spots" on the cash, Petitioner claimed he had cut his finger. Ridley knew that Petitioner shared the apartment with Towanna Brinkley, but he did not see her before leaving. When Ridley asked where Brinkley was, Petitioner claimed she was out driving Petitioner's car, but Ridley "kn[e]w for a fact that she didn't drive." Ridley estimated he was in the apartment for approximately 15 minutes before he left.

At approximately 2:20 a.m., Uzzle and Jones were awakened by the alarm of a smoke detector. Uzzle called 911 again when she heard the "blood curdling screams of a man." When Uzzle turned the lights on, she noticed smoke "everywhere" in her apartment,

and relayed to the emergency dispatcher that there was also a fire in the building.

The fire department arrived at the apartment building and determined the fire was originating from Petitioner's apartment. Inside, firefighters found Petitioner sitting near the living room closet, burned and bleeding from cuts to his arms. Firefighter Bruce Hagerman discovered, and subsequent analysis confirmed, that the source of the fire originated in the master bedroom of the apartment. A mattress was standing upright on top of a box spring, and "all the fabric had been burned off the mattress." Hagerman noticed blood on a pile of sheets and clothing in the bedroom. In the bathroom, Hagerman saw "blood in the bathtub, on the ... floor, toilet, and ... sink." Hagerman then returned to the living room, where Petitioner had been discovered, and saw Towanna Brinkley with her upper body in the closet and her lower body extending into the living room. Brinkley was dead, and there was blood around and near her upper body.

As firefighters removed Petitioner from the apartment, he repeatedly said, "Let me die." Firefighter Jason Edwards assisted in transporting Petitioner to the hospital by ambulance. At the hospital, Edwards heard Petitioner twice say that someone had broken into his apartment, tried to kill him and his girlfriend, then set the apartment on fire with an accelerant. The police found no signs of forced entry, and fire investigators recovered an empty bottle of rubbing alcohol on the floor beside the bed where the fire originated.

Leah Bush, M.D., the Chief Medical Examiner for the Commonwealth, testified that she was a Deputy Medical Examiner in 2003 when she conducted an autopsy on Brinkley. Dr. Bush testified that Brinkley had been stabbed 11 times in her torso, seven of which were fatal. Brinkley also suffered cuts to her face and defensive wounds to her hands. Dr. Bush opined that Brinkley would have died "within minutes" of being stabbed. Brinkley also suffered no thermal injuries and had no soot in her airways, which led Dr. Bush to conclude that Brinkley died before the fire was set.

Sandy Cleary, a forensic examiner with the Newport News Police, testified that she collected and photographed evidence at Petitioner's apartment. Cleary analyzed two sets of clothes with blood on them. DNA testing demonstrated that one set of clothing,

a t-shirt and jeans recovered from the master bedroom, had Brinkley's blood spattered on them. The t-shirt bore Petitioner's initials, "ALS," and the jeans contained Petitioner's identification and other personal items. DNA testing revealed the second set of clothing, a t-shirt recovered from a spare bedroom and the jeans Petitioner was wearing when he was transported to the hospital, contained Petitioner's blood, as well as Brinkley's blood.

A pair of brown sandals recovered from the master bedroom also had Brinkley's blood on the bottom and sides. The "inside" of the sandals contained a DNA mixture from both Petitioner and Brinkley. Shoe prints tracking Brinkley's blood away from her body matched the impression of the sandals.

Angela Moore, a forensic examiner with the Newport News Police, qualified as an expert in blood spatter analysis. Moore testified that the blood found in the bathroom demonstrated a "passive" drip patter, which she described as lacking "directionality." The blood found on the wall near Brinkley's body and the clothes recovered from the crime scene, however, had directionality, which would have required "some force to deposit."

Two blood-stained knives were found in Petitioner's apartment. The first knife, a "small folding buck knife," was discovered in the closet beside Brinkley's body. The second knife, "a very large knife with a large blade," was discovered inside a desk in the master bedroom. The folding knife had Brinkley's blood on it, and the "large knife" had both Brinkley's and Petitioner's blood on it. A sponge was also found in the master bedroom, which contained Brinkley's blood.

In total, more then 30 different swabs were obtained from evidence recovered at the scene. Only one swab, from a shirt, contained DNA other than that of Petitioner and/or Brinkley. The sample, however, was "so small" that it could have been "environmental contamination."

Petitioner presented his own experts in blood spatter analysis and fingerprint analysis, who testified that (i) the Commonwealth's expert's blood spatter analysis was incomplete because she did not physically examine the scene at the time of the crime; and (ii) no fingerprints were recovered from the scene of the crime. Isaiah Davis also testified on behalf of Petitioner, and claimed that Corey

4

> Ridley had told him "he had gotten himself in some trouble ... and he was going ... to talk to someone in law enforcement to try and make a deal to get himself out of trouble." On cross-examination, Davis claimed that the conversation took place within two years of trial.

Final Order, Resp. Ex. C at 4 - 8.

Sanford's first trial commenced on February 7, 2012. Corey Ridley, a witness for the Commonwealth, testified that he visited the apartment shared by Sanford and the victim; it was dimly lit, and he could not see all of it. Tr. 2/7/2012 at 75. When the prosecutor asked Ridley if he thought "anything of it" when Brinkley "wasn't with [Sanford]," Ridley responded that he knew Sanford "from a past killing." Id. at 75-76. The prosecutor interrupted Ridley and requested a recess, and advised the court outside the jury's presence that she had "warned all witnesses they could not bring up prior incidents." Id. at 76-77. She then stated, "[I]t sounded to me like [Ridley] was bringing up the worst of prior incidents, and I don't know if the jury caught onto it. I don't think I caught it in time." Id. Defense counsel stated, "[W]e were going along great in this case. Of course, the Commonwealth was doing a fantastic job. I know good and well they stayed away from it, but I honestly think it could - and I don't know - that it could easily taint the jury." Id. at 77. Counsel then moved for a mistrial and the Commonwealth did not oppose the motion, stating, "I don't think this can be recovered from, Your Honor." Id. at 77. The trial court granted the motion and declared a mistrial. Id. at 78.

Defense counsel subsequently moved to dismiss the indictment on speedy trial, double jeopardy, and prosecutorial misconduct grounds. Tr. 5/11/2012 at 8-20; Tr. 8/10/2012 at 3-5. The trial court denied all the motions. Id. In finding that there had been no prosecutorial misconduct, the court noted that the prosecutor had appeared "pretty shocked in terms of like her whole case just went away when that guy said something." Tr. 5/11/2012 at 12.

After Sanford was convicted following a second trial in October, 2012, he appealed the

conviction to the Court of Appeals of Virginia, where he raised the following claims:

1. The trial court erred in denying his motion to dismiss for violation of his statutory and constitutional rights to a speedy trial where he was tried after the time limit prescribed in Va. Code § 19.2-243.

2. The trial court erred in denying his motion to strike two prospective jurors for cause.

3. The trial court erred in denying his motion to strike the Commonwealth's evidence where it failed to establish his guilt beyond a reasonable doubt.

Sanford's convictions were affirmed in an unpublished opinion where the court concluded that: (1) Sanford's speedy trial right guaranteed by Va. Code § 19.2-243 was not violated, and because he did not include argument to support his contention that his constitutional speedy trial right was violated, the claim was waived pursuant to Virginia Supreme Court Rule 5A:12(c)(5) ("Statements unsupported by argument, authority, or citations to the record do not merit appellate consideration."); (2) the trial court did not err in denying Sanford's motion to strike two jurors; and (3) because Sanford failed to renew his motion to strike at the conclusion of the evidence or to move to set aside the verdict, his challenge to the sufficiency of the evidence was barred pursuant to Rule 5A:18 ("No ruling of the trial court ... will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling."). Sanford v. Commonwealth, R. No. 0139-13-1 (Va. Ct. App. Sept. 13, 2013); Resp. Ex. A. The Supreme Court of Virginia dismissed and refused Sanford's petition for appeal of that result. Sanford v. Commonwealth, R. No. 131824 (Va. Apr. 8, 2014).

On March 15, 2015, Sanford filed a petition for a state writ of habeas corpus in the trial court, raising the following claims:[2]

---

[2]Because Sanford labeled his claims inconsistently in his state habeas application, the trial court presented them numerically and sequentially in its Final Order. Resp. Ex. C at 2, n. 1. The trial court's arrangement is repeated here for clarity and ease of reference.

1. His double jeopardy rights were violated as a result of the Commonwealth's misconduct, which gave rise to his motion for mistrial.

2. Counsel provided ineffective assistance by failing to supply Dr. Laura Pettler, a defense expert in bloodstain analysis and crime scene investigation, with "case files, reports, and photographs necessary to do an analysis" which would have shown a change in the flooring at the crime scene and revealed inaccuracies by the prosecution's expert.

3. Counsel billed him using "knowing and reckless factual misrepresentations."

4. Counsel was ineffective for failing to interview and call Detective Javier Espinoza to testify regarding "potentially exculpatory information." The testimony was necessary because Espinoza "was not an expert in murder cases and some police procedures were not performed."

5. Counsel was ineffective for failing to investigate and call Dr. Christopher Haus, who would have testified that Sanford "received several cuts," including one to his neck. This would have contradicted the Commonwealth's opening and closing statements and impeached the testimony of a medic concerning Sanford's state of consciousness when he arrived at the emergency room.

6. Counsel was ineffective for failing to introduce emergency room medical records to support Sanford's claim that he had been attacked.

7. Counsel was ineffective when he stated during opening and closing arguments that Sanford had drugs in his system, and when he did not state that "this crime was ... a domestic battle between two combatants with knives."

8. Counsel was ineffective for failing to present the testimony of an expert witness who would have rebutted the Commonwealth's DNA analysis.

9. Counsel was ineffective for failing to move to exclude "damaging evidence" of "contamination of two foreign DNA types."

10. Counsel was ineffective for failing to enter into evidence a note Sanford wrote regarding his "concern about imminent harm."

11. Counsel was ineffective for failing to introduce photographs taken at the crime scene of keys and Sanford's broken glasses, which would have shown that "something out of the ordinary had occurred."

12. Counsel was ineffective for failing to preserve a challenge to the sufficiency of the evidence at trial.

13. Counsel was ineffective for failing to cross-examine a firefighter about his prior testimony in a preliminary hearing and participated in "a deliberate act to deceive the Court" when he failed to correct the name of the firefighter which is misspelled in the transcript.

14. Counsel was ineffective for failing to have co-counsel present during trial.

15. Counsel was ineffective for failing to protect Sanford's right to a speedy trial.

16. The prosecutor "gave false testimony" at a hearing on February 6, 2012 when she said witness Leroy Nelson had "just come forth," because she had questioned Nelson at a hearing on December 20, 2010.

17. The Commonwealth knowingly relied on false testimony by Corey Ridley.

18. The Commonwealth committed a Brady violation by withholding numerous items of evidence.

19. Appellate counsel was ineffective for failing to argue that Sanford was denied his constitutional right to a speedy trial.

20. Appellate counsel was ineffective for failing to argue that the Court of Appeals should review the sufficiency of the evidence under the "ends of justice" exception set out in Rule 5A:18.

21. Appellate counsel was ineffective for failing to raise a double jeopardy claim.

The state court dismissed Sanford's habeas petition on December 12, 2016. Resp. Ex. C. Specifically, the court held that claim 1 (alleging a double jeopardy violation) was not cognizable in a habeas corpus proceeding because the issue had been raised at trial or on direct appeal; claims 16-18 were barred from habeas review by the rule of Slayton v. Parrigan, 215 Va. 27, 205 S.E.2d 680 (1974), because they were non-jurisdictional issues that could have been raised at trial and on direct appeal; and the remaining claims of ineffective assistance of counsel were without merit. The Supreme Court of Virginia refused the petition for appeal without opinion. Sanford v. Clarke, R. No. 170318 (Va. Feb. 26, 2018); Resp. Ex. E.

Sanford then turned to the federal forum and timely filed the instant petition for § 2254 relief on March 13, 2018. Respondent filed a Rule 5 Answer and a Motion to Dismiss with a supporting brief and exhibits on April 27, 2018, and supplied Sanford with the notice required by Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975) and Local Rule 7K. [Dkt. No. 7-10] Sanford has responded to the motion which is ripe for disposition.

## II. Federal Proceeding

### A. Claims Raised

In the instant petition for a § 2254 writ of habeas corpus, Sanford makes the following claims:[3]

1(A)(i)      The trial court erred in denying his motion to dismiss which alleged double jeopardy and speedy trial violations.

1(A)(ii)      The Commonwealth committed prosecutorial misconduct when it intentionally procured a mistrial during his first trial in February, 2012.

---

[3]Again, the Court adopts the respondent's arrangement of Sanford's claims and sub-claims for ease of reference. As explained in his brief, respondent has included Sanford's unlabeled grounds for relief as sub-claims. See Resp. Brief at 6, n. 2.

| | |
|---|---|
| 1(B) | The Commonwealth committed prosecutorial misconduct when it failed to stop witness Corey Ridley from testifying during the first trial that he knew of an unrelated "past killing" by Sanford. |
| 1(C) | The trial court "failed to consider the totality of the circumstances prior to the mistrial in determining if [Sanford's] second trial was barred by the Double Jeopardy Clause." |
| 1(D)(i) | The prosecution intentionally committed misconduct on February 7, 2012 because it needed to circumvent Virginia's speedy trial statute to better prepare its case, since it could not request another continuance. |
| 1(D)(ii) | The trial court abused it discretion in failing to consider that prosecutorial misconduct was used to gain an unfair tactical advantage over Sanford. |
| 1(D)(iii) | The state habeas court erred when it denied his motions for an evidentiary hearing and the appointment of counsel, which resulted in an unreasonable determination of the facts. |
| 2(A) | Trial counsel was ineffective because he abandoned Sanford and created a conflict of interest. |
| 2(B) | Counsel was ineffective for failing to call Dr. Christopher Haus and failing to introduce Sanford's emergency room medical records. |
| 2(C) | Counsel was ineffective for failing to investigate and to provide defense expert Dr. Pettler with crime scene photographs of "the bloody sandal prints" which did not match Sanford's pattern of walking. |
| 2(D)(i) | Counsel was ineffective for failing to exclude "the white t-shirt" which was "contaminated" and "seized without a proper warrant. |
| 2(D)(ii) | Counsel was ineffective for failing to call defense DNA expert Shaun Weiss at trial. |

| | |
|---|---|
| 2(D)(iii) | Counsel was ineffective for being unprepared to cross-examine the prosecution's expert regarding DNA testing. |
| 2(E) | Counsel was ineffective for failing to enter into evidence a note written by Sanford that was found at the crime scene, which would have constituted exculpatory evidence of the inadequacy of the police investigation and bolstered the defense theory of an alternative suspect. |
| 2(F)(i) | Counsel was ineffective for failing to interview and call Detective Javier Espinoza, whose testimony would have bolstered defense theories of an inadequate police investigation and a possible alternative suspect. |
| 2(F)(ii) | Counsel was ineffective for failing to preserve a challenge to the sufficiency of the evidence. |
| 3(A)(i) | Appellate counsel was ineffective for abandoning Sanford and creating a conflict of interest. |
| 3(A)(ii) | Appellate counsel was ineffective for failing to file a brief on the merits of Sanford's constitutional speedy trial claim, thereby waiving the issue on appeal. |
| 3(A)(iii) | Appellate counsel was ineffective for failing to "comb the trial transcripts and comply with Rule 5A:18 exceptions to file a merits brief on the sufficiency of the evidence." |
| 3(A)(iv) | Appellate counsel was ineffective for failing to argue that Sanford's double jeopardy rights were violated. |
| 4 | Sanford is actually innocent, which he has demonstrated by producing "new facts" that were not presented at trial. |

## B. Exhaustion and Procedural Default

Before bringing a federal habeas petition, a state prisoner must first exhaust his claims in

the appropriate state courts. See 28 U.S.C. § 2254(b); Rose v. Lundy, 455 U.S. 509, 515-19 (1982). To comply with the exhaustion requirement, a state prisoner "must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999). Thus, in Virginia, a § 2254 petitioner must first have presented the same factual and legal claims to the Supreme Court of Virginia either by way of a direct appeal, a state habeas corpus petition, or an appeal from a circuit court's denial of a state habeas petition. Matthews v. Evatt, 105 F.3d 907, 910-11 (4th Cir. 1997) (quoting Picard v. Connor, 404 U.S. 270, 275-78 (1971) for the proposition that for a claim to be exhausted, "both the operative facts and the 'controlling legal principles' must be presented to the state court."); see Pruett v. Thompson, 771 F.Supp. 1428, 1436 (E.D.Va. 1991), aff'd, 996 F.2d 1560 (4th Cir. 1993) (exhaustion requirement is satisfied when "allegations advanced in federal court ... [are] the same as those advanced at least once to the highest state court.").

In addition, "[a] claim that has not been presented to the highest state court nevertheless may be treated as exhausted if it is clear that the claim would be procedurally barred under state law if the petitioner attempted to present it to the state court." Baker v. Corcoran, 220 F.3d 276, 288 (4th Cir. 2000) (citing Gray v. Netherland, 518 U.S. 152, 161 (1996)). Importantly, "the procedural bar that gives rise to exhaustion provides an independent and adequate state-law ground for the conviction and sentence, and thus prevents federal habeas review of the defaulted claim." Id. (quoting Gray, 518 U.S. at 162).

Sanford failed to present the following claims or portions of claims he raises here to the Virginia courts:

> Claim (1)(A)(i): the portion where Sanford alleges that his motion
> to dismiss based on his constitutional right to a speedy trial was

12

wrongfully dismissed.[4]

Claim 1(D)(i), alleging prosecutorial misconduct aimed at avoiding Virginia's speedy trial statute.[5]

Claim (2)(A), alleging a conflict of interest with trial counsel.

Claim 2(C): the portions alleging counsel was ineffective for failing to provide Dr. Pettler with photographs of bloody sandal prints and for failing to secure expert testimony that such prints would have explained why Sanford's blood was under the victim's fingernail.

Claim 2(D)(i): the portion asserting that trial counsel failed to move to exclude the white t-shirt as having been seized without a warrant.

Claim 2(D)(iii), alleging that trial counsel was ineffective because he was unprepared to cross-examine the prosecution's expert on DNA testing.

Claim 2(F)(i): the portion alleging counsel should have called Detective Espinoza as a witness so the jury could hear testimony regarding "the inadequacy of the police investigation to search for [the] missing vehicle and a possible alternative suspect."

Claim 3(A)(i), alleging a conflict of interest with appellate counsel.

Claim 4, alleging new evidence can establish Sanford's actual innocence.

---

[4]Sanford argued in his motion to dismiss before the trial court that his right to a speedy trial as guaranteed by both the Virginia statutes and the federal constitution was violated. On direct appeal, the court held that the motion to dismiss was rightfully denied as to Sanford's state statutory speedy trial rights, and it found the issue regarding his constitutional right to a speedy trial was defaulted because the petition for appeal contained no argument related to that assertion. Sanford v. Comm., Resp. Ex. A, slip op. at 2. In the state habeas corpus action, Sanford challenged the denial of the motion to dismiss only on double jeopardy rather than speedy trial grounds.

[5]On direct appeal, Sanford argued only that his trial occurred outside the Virginia speedy trial period; there was no assertion that the alleged violation resulted from prosecutorial misconduct.

All of these claims and portions of claims are now incapable of exhaustion, because if they were presented to the Virginia courts they would be dismissed as both untimely, Va. Code § 8.01-654(A)(2), and successive, Va. Code § 8.01-654(B)(2). See Sparrow v. Dir., Dep't of Corrections, 439 F.Supp. 2d 584, 587 (4th Cir. 2006) (finding the limitations period of Va. Code §8.01-654(A)(2) to be an adequate and independent ground); Mackall v. Angelone, 131 F.3d 442, 446 (4th Cir. 1997) (procedural bar of successive habeas applications in Va. Code §8.01-654(B)(2) is a well-recognized adequate and independent ground). These claims and portions of claims thus are defaulted for purposes of federal habeas review. See Bassette v. Thompson, 915 F.2d 932 (4th Cir. 1990).

A portion of Claim 1(A)(ii) as well as Claim 1(B), alleging prosecutorial misconduct with respect to witnesses Leroy Nelson and Corey Ridley, also are procedurally defaulted, because they reiterate claims the state habeas court determined were barred by the holding of Slayton, 205 S.E.2d 680. On federal habeas corpus review, § 2254(d) mandates that a state court's finding of procedural default be presumed correct, provided that the state court relied explicitly on procedural grounds to deny petitioner relief and that the procedural rule relied on is an independent and adequate state ground for denying relief. Ford v. Georgia, 498 U.S. 411, 423-24 (1991). The Fourth Circuit has consistently held that "the procedural default rule set forth in Slayton constitutes an adequate and independent state law ground for decision." Mu'min v. Pruett, 125 F.3d 192, 196-97 (4th Cir. 1997). Therefore, the Virginia court's express finding that Slayton barred review of Claims 1(A)(ii) and 1(B) of this petition also precludes federal review of those claims.

A federal court may not review a procedurally barred claim absent a showing of cause and prejudice. Harris v. Reed, 489 U.S. 255, 262 (1989); McNeil v. Polk, 476 F.3d 206, 211 (4th Cir. 2007). To establish "prejudice," a petitioner must show that an alleged constitutional

violation worked to his "actual and substantial disadvantage, infecting his entire trial with error of constitutional dimension." United States v. Frady, 456 U.S. 152, 170 (1982). A fundamental miscarriage of justice is a narrow exception to the cause and prejudice requirement, and applies only "where a constitutional violation has probably resulted in the conviction of one who is 'actually innocent' of the substantive offense." Richmond v. Polk, 375 F.3d 309, 323 (4th Cir. 2004).

In his Response to the Commonwealth's Motion to Dismiss [Dkt. No 12], Sanford makes no showing of cause and prejudice to overcome the default of these claims, nor does he demonstrate either in his Response or in Claim 4 of this habeas petition that he is actually innocent of Towanna Brinkley's murder. In McQuiggin v. Perkins, 569 U.S. 383, 392 (2013), the Supreme Court held that a convincing claim of actual innocence "may allow a prisoner to pursue his constitutional claims ... on the merits notwithstanding the existence of a procedural bar to relief." This exception applies only in a "severely confined category" - that is, cases in which reliable new evidence shows that "it is more likely than not that 'no reasonable juror' would have convicted" the petitioner had the evidence been available at trial. Id., 133 S.Ct. at 1928, quoting Schlup v. Delo, 513 U.S. 298, 329 (1995). Here, Sanford has presented no new evidence to establish his claim of actual innocence; instead, he reiterates various allegations of which he was aware at the time of trial. Pet. at 46-48. Thus, even if true, these arguments would not satisfy the rigorous requirements of Schlup and McQuiggin, and they do not suffice to allow federal review of his procedurally defaulted claims.

## C. Non-Cognizable Claims

Claim 1(A)(i): Sanford's argument in a portion of this claim that the trial court erred in denying his motion to dismiss based on Virginia's speedy trial statute states no claim for which federal habeas corpus relief is available. "A state prisoner is entitled to relief under § 2254 only

if he is held 'in custody in violation of the Constitution or laws or treaties of the United States.'" Billotti v. Legursky, 975 F.2d 113, 119 (4th Cir. 1992) (quoting Engle v. Isaac, 456 U.S. 107, 119 (1982)). For that reason, questions of state law that do not implicate federal rights are not cognizable on federal habeas review. Id. (citing Inge v. Procunier, 758 F.2d 1010, 1014 (4th Cir. 1985)); Larry v. Branker, 552 F.3d 356, 368 (4th Cir. 2009). Here, then, because this portion of Claim 1(A)(i) presents no federal question, it is not cognizable in this proceeding.

Claim 1(D)(iii): Sanford contends that the state habeas court erred when it denied his motions for an evidentiary hearing and appointment of counsel. It is well established that federal habeas corpus relief is not available for errors in state post-conviction proceedings. See Lawrence v. Branker, 517 F.3d 700, 717 (4th Cir. 2008); Bryant v. Maryland, 848 F.2d 492, 493 (4th Cir. 1988) ("claims of error occurring in a state post-conviction proceeding cannot serve as a basis for federal habeas corpus relief."). Claim 1(D)(iii) thus states no basis for § 2254 relief.

Claim 4: Sanford asserts in Claim 4 that he is actually innocent of the crime of which he stands convicted. Actual innocence is not a freestanding claim in habeas corpus proceedings. McQuiggin, 569 U.S. at 392; Herrera v. Collins, 506 U.S. 390, 404-05 (1993) ("We have never held that [habeas relief] extends to freestanding claims of actual innocence."). Therefore, to the extent that Sanford intends Claim 4 to be such a freestanding claim, it is not cognizable or reviewable on the merits.[6]

### III. Merits Standard of Review

When a state court has addressed the merits of a claim raised in a federal habeas petition, a federal court may not grant the petition based on the claim unless the state court's adjudication is contrary to, or an unreasonable application of, clearly established federal law, or based on an

---

[6]The Court considered the substance of Claim 4 in determining that the actual innocence exception does not apply to render Sanford's procedurally defaulted claims reviewable on the merits.

unreasonable determination of the facts. 28 U.S.C. § 2254(d). Whether a state court decision is "contrary to" or "an unreasonable application of" federal law requires an independent review of each standard. See Williams v. Taylor, 529 U.S. 362, 412-13 (2000). A state court determination runs afoul of the "contrary to" standard if it "arrives at a conclusion opposite to that reached by [the United States Supreme] Court on a question of law or if the state court decides a case differently than [the United States Supreme] Court has on a set of materially indistinguishable facts." Id. at 413. Under the "unreasonable application" clause, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state-court decision applied [the law] incorrectly." Woodford v. Visciotti, 537 U.S. 19, 24-25 (2002). Thus, "[t]he question under the AEDPA is not whether a federal court believes the state court's determination was incorrect, but whether that determination was unreasonable - a substantially higher threshold." Schriro v. Mandrigan, 550 U.S. 465, 673 (2007). "As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Harrington v. Richter, 562 U.S. 86, 103 (2011). "If this standard is difficult to meet - and it is - 'that is because it was meant to be.'" Burt v. Titlow, 571 U.S. 12, 20 (2013) (quoting Richter, 562 U.S. at 102).

When a federal habeas petitioner challenges the reasonableness of the factual basis for a state conviction, the AEDPA "requires federal habeas courts to presume the correctness of state courts' factual findings unless applicants rebut this presumption with 'clear and convincing evidence.'" Schriro, 550 U.S. at 473-74. Under the AEDPA standard, "[t]he focus of federal court review is now on the state court decision that previously addressed the claims rather than the petitioner's free-standing claims themselves." McLee v. Angelone, 967 F.Supp. 152, 156

(E.D. Va. 1997), appeal dismissed, 139 F.3d 891 (4th Cir. 1998) (table).

## IV. Analysis

Remaining Portion of Claim 1(A)(i); Claims 1(C), 1(D)(ii) : In these claims and portions of claims, which correspond to Claim 1 of Sanford's state habeas petition, he cumulatively contends that the Commonwealth acted in bad faith to procure a mistrial, and the trial court erred in denying his motion to dismiss predicated on the resultant violation of his double jeopardy protections. Specifically, Sanford contends in Claim 1(A)(i) that the trial court erred in denying his motion to suppress based on the violation of his double jeopardy rights. Pet. at 5-6. In Claim 1(C), he alleges that the court erred in failing to consider that the prosecution was unprepared at the start of the first trial, as "evidenced by Cartrell Brinkley's reluctance to testify," and the Commonwealth acted in "bad faith" to "incite the mistrial." Pet. at 12-13. In Claim 1(D)(ii), he argues that the trial court abused its discretion in "not applying strictest scrutiny to [the] prosecution instigating the mistrial ... to gain an unfair tactical advantage over" him. Pet. at 16.

None of these allegations is borne out by the record. Cartrell Brinkley was the first witness at both the February, 2012 mistrial and the October, 2012 trial, and he testified consistently at both proceedings. Tr. 2/7/2012 at 16-20; Tr. 10/30/2012 at 108-15. In the mistrial, the Commonwealth requested a recess after opening statements only to set up a projector and screen for use during Brinkley's testimony. Tr. 2/7/2012 at 15-16, 18. The record is devoid of any evidence to suggest that Brinkley was reluctant to testify or that the Commonwealth was unprepared during the mistrial. As to Sanford's contention that the Commonwealth intentionally solicited improper testimony from Corey Ridley to induce the mistrial, the trial court observed in denying Sanford's subsequent motion to dismiss that the prosecutor's "reaction was pretty shocked in terms of like her whole case just went away when [Ridley] said something," Tr. 5/11/2012 at 12, and in connection with a later claim in the state

habeas petition the same court found that "there was no evidence of prosecutorial misconduct in this case." Final Order, Resp. Ex. C at 24.

Federal law recognizes "[t]he general rule ... that the double jeopardy clause does not bar reprosecution ... where circumstances develop not attributable to prosecutorial or juridical overreaching ... even if defendant's motion is necessitated by a prosecutorial error." Oregon v. Kennedy, 456 U.S. 667, 670 (1982), quoting United States v. Jorn, 400 U.S. 470, 485 (1971). "However, retrial is barred where the error that prompted the mistrial is intended to provoke a mistrial or is motivated by bad faith or undertaken to harass or prejudice the defendant." Id. Because Sanford has come forward with no clear and convincing evidence to rebut the state court's factual determination that the mistrial was not procured through prosecutorial misconduct, that finding is presumed correct, Schriro, 550 U.S. at 473-74, and the determination that Sanford's right to avoid double jeopardy was not compromised when he was retried after the mistrial was consistent with this controlling federal principle. That being so, the state courts' rejection of this compound claim must be allowed to stand. Williams, 529 U.S. at 412-13.[7]

Claim 2(B): Sanford contends that trial counsel was ineffective for failing to call Dr. Christopher Haus to testify and for failing to introduce Sanford's emergency room records from the night of the fire. To establish ineffective assistance of counsel, a petitioner must show that (1) "counsel's performance was deficient" and (2) "the deficient performance prejudiced the

---

[7]Respondent points out that in Sanford's petition for appeal to the Supreme Court of Virginia, he assigned error only the trial court's refusals to appoint counsel and to hold an evidentiary hearing on it. [Resp. Ex. D at 7] Thus, the compound claim expressed here might fairly be regarded as unexhausted and defaulted, Burket, 208 F.3d at 183 n. 11; however, in the argument section of the petition for appeal, Sanford discussed the merits of the claim, id. at 12-19. As a result of that discussion being included in the petition the basis for the claim's rejection by the Virginia court is unclear. Pursuant to § 2254(b)(2), a federal court, in its discretion, may deny on the merits a habeas corpus claim despite the applicant's failure to exhaust available remedies in state court. Swisher v. True, 325 F.3d 225, 232-33 (4th Cir.), cert. denied, 539 U.S. 971 (2003). Because Sanford's claim is clearly without merit the Court has exercised that discretion here.

defendant." Strickland v. Washington, 466 U.S. 668, 687 (1984). To prove that counsel's performance was deficient, a petitioner must show that "counsel's representation fell below an objective standard of reasonableness" id. at 688, and that the "acts and omissions" of counsel were, in light of all the circumstances, "outside the range of professionally competent assistance" id. at 690. Such a determination "must be highly deferential," with a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689; see also, Burket, 208 F.3d at 189 (reviewing court "must be highly deferential in scrutinizing [counsel's] performance and must filter the distorting effects of hindsight from [its] analysis"); Spencer v. Murray, 18 F.3d 229, 233 (4th Cir. 1994) (court must "presume that challenged acts are likely the result of sound trial strategy").

To satisfy Strickland's prejudice prong, a "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id.; accord, Lovitt v. True, 403 F.3d 171, 181 (4th Cir. 2005). The burden is on the petitioner to establish not merely that counsel's errors created the possibility of prejudice, but rather "that they worked to his actual and substantial disadvantage, infecting his entire trial with errors of constitutional dimension." Murray v. Carrier, 477 U.S. 478, 494 (1986) (citations omitted, emphasis original). The two prongs of the Strickland test are "separate and distinct elements of an ineffective assistance claim," and a successful petition "must show both deficient performance and prejudice." Spencer, 18 F.3d at 233. Therefore, a court need not review the reasonableness of counsel's performance if a petitioner fails to show prejudice. Quesinberry v. Taylor, 162 F.3d 273, 278 (4th Cir. 1998).

When Sanford made these same arguments in claims 5 and 6 of his state habeas petition, the trial court found them to be without merit for the following reasons:

In claim 5, Petitioner alleges counsel was ineffective for failing to investigate and call Dr. Christopher Haus, who would have testified that Petitioner "received several cuts," including one to his neck, which would have contradicted the Commonwealth's opening and closing arguments. Petitioner further claims Dr. Haus' testimony would have "impeached the testimony of firefighter/medic Edwards concerning the Petitioner's state of consciousness upon arrival to the emergency room."

Claim 5 is without merit. Petitioner does not identify which portions of the Commonwealth's opening and closing statements Dr. Haus' testimony allegedly would have "contradicted." Similarly, Petitioner fails to describe how the outcome of his trial would have been different but for counsel's alleged "error." Conclusory allegations do not satisfy Strickland. ...

Regardless, the record demonstrates that firefighter Edwards testified that Petitioner twice claimed an intruder broke into his apartment, attacked him and Brinkley, and then set the apartment on fire with an accelerant. Edwards also testified he was unsure whether Dr. Haus was present during petitioner's statements; thus, Dr. Haus' testimony, at best for Petitioner, would have been silent as to Petitioner's bizarre statement about an intruder, or at worst, would have corroborated Edwards' testimony. Accordingly, Petitioner had nothing to gain and much to lose had counsel called Dr. Haus. Witness selection "is an essential part of effective representation. Here, it demonstrates that counsel [was] making strategic choices, not that [he] failed to make those choices. Decisions relating to witness selection are normally left to counsel's judgment, and this judgment will not be second-guessed by hindsight." Williams v. Armentrout, 912 F.2d 924, 934 (8th Cir. 1990) (en banc) (citation and quotation omitted); see also Blanco v. Singletary, 943 F.2d 1377, 1495 (11th Cir. 1991) ("The decision as to which witnesses to call is an aspect of trial tactics that is normally entrusted to counsel.") Petitioner has failed to establish either deficient performance or prejudice as required by Strickland, and claim 5 is dismissed.

In claim 6, Petitioner alleges counsel was ineffective for failing to introduce medical records into evidence, which would have supported Petitioner's claim that he had been attacked.

Claim 6 is without merit. Petitioner fails to describe how the

> outcome of his trial would have been different, but for claiming
> that, had the jury heard evidence "that petitioner received several
> cuts to his body, the probability that he was ... attack[ed] would
> have increased." Conclusory allegations do not satisfy Strickland.
> ... Further, the record also affirmatively demonstrated that
> Petitioner was in "serious condition" upon his arrival at the
> hospital, with second and third-degree burns and lacerations. Thus,
> even assuming *arguendo* that counsel had erred, Petitioner can
> demonstrate no prejudice. Claim 6 fails to satisfy either prong of
> Strickland, and it is dismissed.

Final Order, Resp. Ex. C at 13 -14, state citations omitted. As noted previously, this reasoning is

imputed to the Supreme Court of Virginia, which denied further review without comment. Ylst,

501 U.S. at 803.

It is well settled in federal jurisprudence that "strategic choices made [by counsel] after

thorough investigation ... are virtually unchallengeable." Gray v. Branker, 529 F.3d 220, 229 (4th

Cir.), cert. denied, 129 S. Ct. 1579 (2009), quoting Strickland, 446 U.S. at 690-91. In reviewing a

claim of ineffective assistance by counsel, a court must start "with the premise that 'under the

circumstances, the challenged action[s] might be considered sound trial strategy.'" Cullen v.

Pinholster, 563 U.S. 170, 191 (2011). As to Sanford's claim that failure to call Dr. Haus as a

witness amounted to ineffective assistance, federal law recognizes that decisions concerning the

calling of witnesses are matters of strategy left to the attorney, and generally cannot constitute

ineffective assistance. Jones v. North Carolina, 547 F.2d 808 (4th Cir. 1977). In this case, for the

reasons explained in the foregoing order, Dr. Haus' testimony would have gained Sanford

nothing and at worst would have corroborated the firefighter's damaging testimony, and

counsel's decision not to call Haus to testify accordingly was a sound strategic decision that did

not amount to ineffective assistance. Similarly, as the Virginia court determined, it is apparent

that Sanford suffered no prejudice when the emergency room records were not introduced, as

they would have been merely cumulative of other evidence concerning his condition. See

Winfield v. Roper, 460 F.3d 1026, 1034 (8th Cir. 2006) ("[F]ailure to present cumulative testimony is not contrary to, or an unreasonable application of, federal law ..."). For these reasons, the Virginia courts' resolution of these claims was factually reasonable and in accord with controlling federal principles, Strickland, supra, and the same result must be reached here. Williams, 529 U.S. at 412-13.

Claim 2(C): In the portion of Claim 2(C) that was presented to the Virginia courts and hence is not procedurally defaulted, Sanford argues as he did in Claim 2 of his state habeas petition that counsel was ineffective for failing to provide Dr. Pettler, the defense expert in bloodstain analysis and crime scene investigation, with "case files, reports, and photographs necessary to do an analysis." Further, he asserts that the photographs would have shown a "change in flooring at the crime scene" which would have revealed inaccuracies in the opinion of the prosecution's expert. The Virginia courts rejected this argument both because it was merely conclusory, and also for the following reasons:

> [T]he record, including the trial transcript, demonstrates that the
> Commonwealth provided Dr. Pettler with "every" photograph, the
> reports of its blood spatter expert, and "all" laboratory reports. The
> record already included numerous photographs of the crime scene,
> as it existed on December 4, 2003. [Prosecution expert] Moore also
> conceded that while she examined photographs taken at the time
> and scene of the crime, she did not examine the physical crime
> scene because she was not then employed by the Newport News
> Police. Moore also conceded that she knew "things had been
> changed in the apartment." Thus, the record affirmatively
> demonstrates that Dr. Pettler was provided with the materials
> Petitioner alleges she was not. Further, Petitioner cannot
> demonstrate any prejudice because the record already reflected that
> Moore did not physically examine the location of the crime until
> years after its commission, and that the layout of the apartment had been altered.
>
> Accordingly, claim 2 satisfies neither the performance nor the
> prejudice prong of Strickland, and it is dismissed.

Final Order, Resp. Ex. C at 11-12.

The Virginia courts' conclusion that this claim failed as being both conclusory and meritless was based upon a reasonable interpretation of the record facts and was in accord with applicable federal principles. See Nickerson v. Lee, 971 F.2d 1125, 1135 (4th Cir. 1992) ("bare allegation" of constitutional error is insufficient to warrant habeas relief); Winfield, 460 F.3d at 1034 (failure to present cumulative evidence is not ineffective performance). Accordingly, this claim warrants no relief here. Williams, 529 U.S. at 412-13.

Claim 2(D)(i): In the portion of Claim (2)(D)(i) that was raised in the state courts and hence is not defaulted, Sanford argues that his attorney provided ineffective assistance for failing to move to exclude a white t-shirt recovered at the crime scene that was found to contain "environmental contamination." The Virginia courts deemed this argument to be "without merit" for the following reasons:

> The record, including the trial transcript, overwhelmingly demonstrated that Petitioner's and Brinkley's DNA was present throughout more than 30 samples obtained from evidence recovered at the crime scene. The Commonwealth's expert conceded that one sample, from a shirt, contained DNA other than that of Petitioner and/or Brinkley. The sample, however, was "so small" that it could have been "environmental contamination." There was no such basis upon which counsel could have "moved to exclude" this sample, as it was found in Petitioner's apartment, and the expert conceded it contained no DNA from Petitioner or Brinkley; thus making it the only sample that did not incriminate Petitioner.
>
> In any event, Petitioner fails to describe how the outcome of his trial would have been different but for counsel's alleged "error." Conclusory allegations do not satisfy Strickland ... Accordingly, Claim 9 fails to satisfy either prong of Strickland, and it is dismissed.

Final Order, Resp. Ex. C at 16, state citations omitted.[8]

---

[8]Sanford argues here for the first time that the t-shirt was "seized without [a] proper warrant." Pet. at 34. Because that allegation was not made in any of Sanford's state court proceedings it is

For the reasons it clearly expressed, the Virginia court's determination that counsel did not render ineffective assistance by failing to move to exclude the t-shirt was factually reasonable and in accord with Strickland, supra. There was no legal basis upon which such a motion could have been successfully predicated, and counsel is not ineffective for failing to make a futile motion. See Moody v. Polk, 408 F.3d 141, 151 (4th Cir. 2005). Even were that not so, it is apparent that Sanford suffered no prejudice when the shirt with such a faint trace of DNA that it could have been caused by "environmental contamination" was admitted, given that more than 30 samples recovered from the crime scene contained DNA from Sanford and the victim. Because the state court decision was not contrary to nor an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts, the same result is compelled here. See 28 U.S.C. § 2254(d).

Claim 2(D)(ii): Sanford asserts that trial counsel was ineffective for failing to call "defense DNA expert, Shaun Weiss" at trial to rebut the Commonwealth's DNA analysis. The Virginia courts found this claim to be "without merit:"

> Petitioner fails to proffer an affidavit from Weiss, describing what his testimony would have been. The failure to proffer an affidavit of a witness's expected testimony is fatal to a habeas claim. Morva v. Warden, 285 Va. 511, 520, 741 S.E.2d 781, 789 (2013) (affidavit required to substantiate purported witness testimony alleged by petitioner in his habeas petition). Further, other than generically stating that Weiss's purported and undisclosed testimony would have countered the Commonwealth's overwhelming DNA evidence, Petitioner fails to describe how the outcome of his trial would have been different. Conclusory allegations do not satisfy Strickland ... Claim 8 fails to satisfy either prong of Strickland, and it is dismissed.

Final Order, Resp. Ex. C at 15 -16, state citations omitted.

---

procedurally barred from federal consideration. Baker, 220 F.3d at 288. It may explain, however, why Sanford believes counsel should have moved to exclude the t-shirt, a suggestion which otherwise is illogical.

The foregoing holding is squarely in line with federal law, which recognizes that in general, courts "are reluctant to find ineffective assistance based upon complaints regarding uncalled witnesses." Lenz v. True, 370 F.Supp.2d 446, 479 (W.D. Va. 2005). A petitioner cannot show that he was prejudiced by the absence of a witness' testimony unless he demonstrates "not only that [the] testimony would have been favorable, but also that the witness would have testified at trial." Alexander v. McClotter, 775 F.2d 595, 602 (5th Cir. 1985). Thus, where a petitioner fails to proffer precisely what testimony a missing witness would have provided and to supply an affidavit verifying that proffer, he does meet his burden to demonstrate that counsel's performance was ineffective. See Makdessi v. Watson, 682 F. Supp. 2d 633, 654 (E.D. Va. 2010). Because the Virginia courts' resolution of this claim was factually reasonable and in accord with these controlling federal principles, the same result must be reached here. Williams, 529 U.S. at 412-13.

Claim 2(E): Sanford contends that counsel was ineffective for failing to enter into evidence a note Sanford wrote which was found at the crime scene in which he expressed his "concern about imminent harm." He argues that this note "would have been the cornerstone of [his] case" and was "exculpatory" because it would have demonstrated "the inadequacy of the police investigation" into his purported "missing vehicle." Further, Sanford argues that counsel's alleged error "undermined the defense theory of an alternative suspect." The Virginia courts rejected this argument for the following reasons:

> The note [Sanford] references would have been inadmissable hearsay. Counsel was not ineffective for declining to move for its admission, as counsel is not ineffective for failing to make a futile motion. ... Further, [Sanford's] theory of the case was, in part, that he was in a happy and loving relationship with Brinkley and that he had no reason to harm her. Setting aside the admissibility of the note, its content would have undoubtedly been detrimental to [Sanford's] case, and counsel made a prudent decision to avoid it.

Final Order, Resp. Ex. C at 16 -17, citations omitted.[9]

Because the note to which Sanford refers constituted inadmissible hearsay, the Virginia courts' dismissal of this claim is consistent with the settled federal principle that a lawyer cannot be ineffective for failing to make a futile motion. Moody, 408 F.3d at 151. Even were that not so, the fact that the note's substance would have undermined the defense's theory of the case compels the presumption that counsel's failure to introduce it into evidence amounted to sound trial strategy. Cullen, 563 U.S. at 191. For these reasons, the claim warrants no federal relief. Williams, 529 U.S. at 412-13.

Claim 2(F)(i): In the portion of this claim that is not procedurally defaulted, Sanford asserts that counsel provided ineffective assistance by failing to call Detective Javier Espinoza as a witness. Sanford alleges that Espinoza would have testified that Sanford voluntarily "came to see him ... two years prior to this charge" to report that "his car was being tamper[ed] with in a harmful manner." According to Sanford, he was prejudiced by this omission because the jury did not hear "potentially exculpatory information" since Espinoza was "an expert in murder cases and some police procedures were not performed." The Virginia courts found no merit to this argument for the following reasons:

> Petitioner does not identify what "potentially exculpatory
> information" Espinoza possessed, nor does he identify what
> "police procedures were not performed." Additionally, and equally
> fatal to his claim, Petitioner does not describe how the outcome of
> his trial would have been different but for counsel's alleged
> "error." Conclusory allegations do not satisfy Strickland ...

Final Order, Resp. Ex. C at 12 -13, state citations omitted. Because this determination was

---

[9]It appears that in his pro se postconviction proceedings, Sanford altered his theory of the case. In a state habeas claim which he did not include in this federal petition, he alleged that trial counsel was ineffective for failing to argue in opening and closing statements that he and the decedent were "combatants" in a "domestic battle ... with knives." Resp. Ex. B §14B at 11.

based on a reasonable interpretation of the facts and in accord with applicable federal principles, Nickerson, 971 F.2d at 1135, the same result must be reached here. Williams, 529 U.S. at 412-13.

Claim 2(F)(ii): Sanford contends that his trial counsel was ineffective for failing to preserve a challenge to the sufficiency of the evidence and thus precluded the argument from being considered on direct appeal. The Virginia courts firmly rejected this argument:

> Assuming *arguendo* that counsel erred in failing to renew his motion to strike after the conclusion of the evidence, Petitioner cannot demonstrate that he was prejudiced. "[T]here is no reason for a court deciding an ineffective assistance claim ... to address both components of the inquiry if the defendant makes an insufficient showing on one." Strickland, 466 U.S. at 697. Here, the evidence against Petitioner was overwhelming. DNA and blood-spatter analysis conclusively demonstrated that Petitioner murdered Brinkley. Further, witnesses testified that Petitioner and Brinkley entered the apartment together on the afternoon of December 3, 2003, [and] that no one else entered the apartment before a woman screamed. At the same time, a neighbor's closet - located on the side of the wall of the closet where Brinkley's body was found - began "slamming on its hinges" as a result of the force applied from Petitioner's side of the wall. There is nothing in the record that demonstrates Petitioner could have successfully challenged the sufficiency of the evidence.

> \* \* \*

> [T]he judgment of the trial court is presumptively correct and "shall not be set aside unless it appears from the evidence that such judgment is plainly wrong or without evidence to support it." Va. Code § 8.01-680; Pruitt [v. Commonwealth], 274 Va. [382] at 384, 650 S.E.2d [684] at 684. In conducting this review, the appellate court does not "ask itself whether *it* believes that the evidence at trial established guilt beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 318-19 (1979) (emphasis in original) (citation omitted). Rather, the relevant question is whether "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Id. (emphasis in original).

> Given the appellate standard of review and the overwhelming

evidence against Petitioner, he cannot establish that he was prejudiced as a result of counsel's alleged error. A criminal defendant "'is entitled to a fair trial but not a perfect one,' for there are no perfect trials." Kirby v. Commonwealth, 50 Va. App. 691, 698, 653 S.E.2d 600, 604 (2007) (quoting Brown v. United States, 411 U.S. 223, 231-32 (1973)). "The essence of an ineffective-assistance claim is that counsel's unprofessional errors so upset the adversarial balance between defense and prosecution that the trial was rendered unfair and the verdict rendered suspect." Kimmelman v. Morrison, 477 U.S. 365, 374 (1986). The verdict in this case was far from suspect. Accordingly, [this claim] fails to satisfy the prejudice prong of Strickland, and it is dismissed.

Final Order, Resp. Ex. C at 18 -20, footnote omitted.

As the Virginia courts acknowledged, a federal court asked to weigh the sufficiency of the evidence to sustain a conviction must view the evidence in the light most favorable to the prosecution and must determine whether any rational trier of fact could have found the defendant guilty. Jackson, 443 U.S. at 319. On habeas review of a state conviction, the court is required to give deference to findings of fact made by both the state trial and appellate courts, 28 U.S.C. § 2254(d), and must confine its inquiry to whether the trier of fact made a rational decision to convict. Herrera, 506 U.S. at 402. When these standards are applied here, it is apparent based on the state courts' findings of fact that a rational jury could have determined that Sanford was guilty of the second degree murder of Brinkley. That being so, the state court's finding that Sanford's claim of ineffective assistance fails because he cannot show that he was prejudiced by his lawyer's asserted failure to preserve the issue of the sufficiency of the evidence was in accord with Strickland, supra, and must be allowed to stand. Williams, 529 U.S. at 412-13.

Claim 3(A)(ii):  Sanford asserts that his appellate counsel rendered ineffective assistance by failing to file a brief on the merits of Sanford's constitutional speedy trial claim, and thereby waived the issue on appeal. The Virginia courts disagreed for the following reasons:

Counsel's choice of which issues to raise on appeal is virtually unassailable. Jones v. Barnes, 463 U.S. 745, 751-52 (1983)

(counsel cannot be found ineffective for failing to raise every non-frivolous issue identified by a defendant); Morrisette v. Warden, 270 Va. 188, 191, 613 S.E.2d 551, 555 (2005) (citing Barnes, 463 U.S. at 751-52). While Barnes does not wholly preclude any Strickland claims based upon appellate claims, "[g]enerally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome." Smith v. Robbins, 528 U.S. 259, 288 (2000) (quoting Gray v. Greer, 800 F.2d 644, 646 (7th Cir. 1986)). Here, the issue Petitioner identifies as ignored is meritless, as defense counsel twice moved for a continuance after the February 7, 2012 mistrial. The claim's lack of merit is further corroborated by the fact that this Court twice denied Petitioner's motions to dismiss based upon both a violation of Code § 19.2-243 and Sixth Amendment speedy-trial grounds. Claim 19 satisfies neither the performance nor the prejudice prongs of Strickland, and it is dismissed.

Final Order, Resp. Ex. C at 22.

As the state courts recognized, the Strickland analysis applies to claims of ineffective assistance on appeal as well as at trial. Matire v. Wainwright, 811 F.2d 1430, 1435 (11th Cir. 1987). Because "appellate counsel is given wide latitude to develop a strategy," Lovitt v. Angelone, 208 F.3d 172, 189 (2000), he or she is not required to assert every conceivable claim on appeal, and counsel's choice of which appellate issues to pursue is virtually unassailable. Jones, 463 U.S. at 751-52. Here, for the reasons explained by the Virginia court, this claim satisfies neither component of the Strickland analysis, and its rejection consequently was factually reasonable and in accord with controlling federal authority. The same result accordingly must be reached here. Williams, 529 U.S. at 412-13.

Claim 3(A)(iii): Sanford contends that appellate counsel was ineffective for failing to "comb" through the "trial transcripts" to find a basis on which the Court of Appeals of Virginia would review the sufficiency of the evidence under the "ends of justice" exception set out in Rule 5A:18. The Virginia courts found no merit to this argument, as follows:

... For the reasons previously stated ... a challenge to the

30

sufficiency of the evidence would not have been successful on appeal because the evidence against Petitioner was overwhelming. Further, appellate counsel was not ineffective for declining to ask the Court of Appeals to apply the ends-of-justice exception. See Jiminez v. Commonwealth, 241 Va. 244, 249, 402 S.E.2d 678, 680 (1991) ("We consistently have applied the [contemporaneous objection] rule in both civil and criminal cases, including cases in which the death penalty was imposed. Indeed, it is a rare case in which, rather than invoke Rule 5:25 [the Supreme Court's equivalent of Rule 5A:18], we rely upon the exception and consider an assignment of error not preserved at trial to enable this Court to attain the ends of justice.") (citations and quotations omitted).

Additionally, Petitioner fails to proffer what counsel should have argued before the Court of Appeals to warrant the rare application of the ends-of-justice exception. Conclusory allegations do not satisfy Strickland ... Accordingly, [this claim] fails to satisfy either prong of Strickland, and it is dismissed.

Final Order, Resp. Ex. C at 23, state citations omitted.

Under Virginia law, a defendant seeking to avail himself of the ends-of-justice exception to the contemporaneous objection requirement "must affirmatively show that a miscarriage of justice has occurred, not that a miscarriage of justice might have occurred." Redman v. Commonwealth, 25 Va. App. 215, 221, 487 S.E.2d 269, 272 (1997). That principle is consistent with federal law, which holds that a limited exception to the rule that a timely objection must be made to preserve error exists only where "[a] plain error that affects substantial rights" has occurred. Id., quoting Fed. R. Crim. P. 52(b). Here, where Sanford made no proffer of what counsel should have argued to obtain the ends-of-justice exception, and where the evidence against Sanford was "overwhelming," the state court's determination that this claim satisfies neither prong of Strickland was reasonable. Accordingly, the claim likewise must be dismissed here. Williams, 529 U.S. at 412-13.

Ground 3(A)(iv): In this claim, Sanford faults appellate counsel for failing to assign the

violation of his double jeopardy rights as error on appeal. The Virginia courts disagreed:

> Counsel's choice of which issues to raise on appeal is virtually
> unassailable. Barnes, 463 U.S. at 752-53. To establish a double
> jeopardy violation, appellate counsel would have been required to
> prove that the Commonwealth improperly procured the February 7,
> 2012 mistrial. See Kemph v. Commonwealth, 17 Va. App. 335,
> 341, 437 S.E.2d 210, 213 (1993). During Petitioner's February 7,
> 2012 trial, a Commonwealth's witness spontaneously referred to a
> "past killing" committed by Petitioner. (2/7/2012 Tr. at 76).
> Petitioner moved for a mistrial, and this Court granted the motion.
> (2/7/2012 Tr. at 77-78). "When the defendant's actions cause the
> mistrial, or when a mistrial is declared at the defendant's behest, he
> is not permitted to claim the protection of the double jeopardy bar."
> Kemph, 17 Va. App. at 340-41, 437 S.E.2d at 213. "However,
> when a defendant requests a mistrial because of intentional
> prosecutorial misconduct, the double jeopardy bar will apply." Id.
> at 341, 437 S.E.2d at 213. There was no evidence of prosecutorial
> misconduct in this case, and Petitioner's conclusory allegation of
> the same is insufficient. ... In fact, trial counsel moved to dismiss
> the indictment based upon double jeopardy and prosecutorial
> misconduct, but this Court denied the motions, noting that the
> prosecutor appeared "shocked" by the witness's unresponsive
> statement. Claim 21 satisfies neither the performance nor the
> prejudice prongs of Strickland, and it is dismissed.

Final Order, Resp. Ex. C at 23-24.

Federal law recognizes that appellate counsel is not constitutionally obligated to raise

every possible claim on appeal, and failure to do so does not render counsel's performance

deficient. Evitts v. Lucey, 469 U.S. 387, 394 (1985). Here, the state trial court determined that

"there was no evidence of prosecutorial misconduct in this case," and noted that the prosecutor

appeared "shocked" when the witness mentioned petitioner's prior crime. As Sanford has

presented no clear and convincing evidence to the contrary, this Court must presume the

correctness of that factual determination. Schriro, 550 U.S. at 473-74. Based upon that finding,

an argument that Sanford's double jeopardy rights were violated when he was retried after the

mistrial was declared would have been rejected. Kemph, 17 Va. App. at 340-41, 437 S.E.2d at

213. Accordingly, this claim satisfies neither component of the <u>Strickland</u> analysis, and it merits no relief. <u>Williams</u>, 529 U.S. at 412-13.

## V. Conclusion

For the foregoing reasons, respondent's Motion to Dismiss this petition will be granted, and the petition will be dismissed with prejudice by an appropriate Order to be issued with this Memorandum Opinion.

Entered this ___6ᵗʰ___ day of ___February___ 2019.

Alexandria, Virginia

_____/s/_____
Leonie M. Brinkema
United States District Judge