## IN THE UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF VIRGINIA

### Alexandria Division

| | | |
|---|---|---|
| Arthur Lee Sanford,<br>　　　Petitioner, | ) ) ) | |
| v. | ) ) | 1:18cv303 (LMB/LRV) |
| Harold W. Clarke,<br>　　　Respondent. | ) ) ) | |

### MEMORANDUM OPINION

Arthur Lee Sanford (Petitioner of Sanford), a Virginia inmate proceeding pro se, has filed

a petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, challenging the

constitutionality of his 2013 second-degree murder conviction in the Circuit Court for the City of

Newport News, Virginia. After respondent filed a Rule 5 Answer and a Motion to Dismiss with a

supporting brief and exhibits on April 27, 2018, and Sanford responded, the Court granted the

respondent's motion to dismiss and dismissed the petition on February 6, 2019. [Dkt. Nos. 19,

20]. Sanford appealed and the Fourth Circuit dismissed his appeal on October 3, 2019. [Dkt. No.

25]. Thereafter, Sanford filed a motion for relief from judgment on November 13, 2019, which

the Court denied on April 30, 2020. [Dkt. Nos. 30, 33]. He noted an appeal to the Fourth Circuit,

which vacated and remanded the matter to this Court on November 3, 2022. [Dkt. No. 45]. The

Fourth Circuit found that the respondent had not complied with Rule 5 of the Rules Governing

Section 2254 Cases in the United States District Courts. The respondent has admitted that he had

failed to comply with Rule 5, which requires that a respondent file parts of the transcript that the

respondent considers relevant and any brief that the petitioner submitted in an appellate court

contesting the conviction or sentence, or contesting an adverse judgment or order in a post-

conviction proceeding. Sanford v. Clarke, 52 F.4th 582, 586 (4th Cir. 2022) (citing Rules 5(c) and (d)).

Respondent has filed a renewed Rule 5 Answer and Motion to Dismiss, with a brief in support and exhibits, to which Sanford has responded by filing a reply to the motion to dismiss and a supplemental reply to the motion to dismiss. [Dkt. Nos. 63, 69].[1] Accordingly, this matter is now ripe for disposition. For the reasons that follow, respondent's Motion to Dismiss will be granted, and the petition dismissed with prejudice.

## I. Procedural History and Background

On January 10, 2011, a grand jury indicted Sanford for the December 3, 2003 first-degree murder of Towanna Brinkley, and his case was set for a jury trial on February 7, 2012. During the February 7, 2012 trial, Corey Ridley, a witness for the Commonwealth, testified that he visited the apartment shared by Sanford and the victim on December 3, 2003, but Brinkley was not present. [Dkt. 67-1] at 73-75. Sanford had asked him to come over so he could re-pay Ridley money he owed him. The prosecutor asked Ridley if he thought "anything of it" because Brinkley "wasn't with [Sanford]." Id. at 75. In his response to the question, Ridley testified that as he went to pick up the money on the table, he saw "blood spatter on the money" and "it dawned" on Ridley that he knew Sanford "from a past killing." Id. at 76. The prosecutor interrupted Ridley and requested a recess to advise the court outside the jury's presence that she had "warned all witnesses they could not bring up prior incidents." Id. at 76-77. She then stated, "[I]t sounded to me like [Ridley] was bringing up the worst of prior incidents, and I don't know

---

[1] The Court granted Sanford's motion to be provided with portions of the habeas record and trial record, and respondent was directed to provide him with "Exhibits A through G to petitioner's state habeas petition, the February 7, 2012 and the January 11, 2013 transcripts, petitioner's 'Motion in Opposition' to the respondent's motion to dismiss his state habeas petition, and his 'Opposition to final order.'" [Dkt. No. 65] at 3.

2

if the jury caught onto it. I don't think I caught it in time." Id. at 77. Defense counsel stated, "[W]e were going along great in this case. Of course, the Commonwealth was doing a fantastic job. I know good and well they stayed away from it, but I honestly think it could—and I don't know—that it could easily taint the jury." Id. at 77. Defense counsel moved for a mistrial which the Commonwealth did not oppose. Id. at 77. The trial court granted the motion and declared a mistrial. Id. at 78.

Defense counsel subsequently moved to dismiss the indictment on speedy trial, double jeopardy, and prosecutorial misconduct grounds. [Dkt. No. 60-20] at 1-13; [Dkt. No. 60-21] at 1-3. The trial court denied all the motions. [Dkt. No. 60-20] at 2, 14-15. In finding that there had been no prosecutorial misconduct, the court noted that the prosecutor had appeared "pretty shocked in terms of like her whole case just went away when that guy said something." [Dkt. No. 60-20] at 5.

Sanford's second jury trial lasted three days. On November 1, 2012, the jury convicted him of second-degree murder. (CCT at 977-79).[2] At the sentencing hearing on January 11, 2013, the trial judge sentenced Sanford to forty years in prison. [Dkt. No. 60-1].

Sanford, by counsel, filed a petition for appeal in the Court of Appeals of Virginia, Sanford v. Commonwealth, Record No. 0139-13-1, asserting three assignments of error:

1) "The trial court erred in denying Sanford's motion to dismiss for violation of Sanford's statutory and constitutional right to a speedy trial, where Stanford was tried after the time limit prescribed in Va. Code Section 19.2-243."

2) "The trial court erred in denying Sanford's motion to strike prospective jurors Gregory Raines and Brenda Grizzard for cause because their responses to voir dire indicated that they could not impartially weigh the evidence in the case."

3) "The trial court erred in denying Sanford's motion to strike the Commonwealth's evidence as to Va. Code Section 18.2-32 where the evidence

---

[2] References to the criminal manuscript record are designated as "CCT at ___."

failed to establish beyond a reasonable doubt that Sanford murdered Towanna Brinkley."

[Dkt. No. 60-2 at 15]. On September 12, 2013, the court denied Sanford's petition for appeal. In its order, the court found that:

- The trial court had not erred in denying the motion to dismiss on statutory speedy trial grounds because Sanford's "February 2012 trial was commenced timely, and the subject trial 'was but an extension of that same proceeding, based upon the same indictment and process and following a regular, continuous order' and without 'implicating a new speedy trial time frame.'" [Dkt. No. 60-4] at 2.
- Sanford defaulted "his assignment of error that his constitutional right to a speedy trial was . . . violated [because] his petition for appeal contain[ed] no argument related to this assertion." Id. (citing Va. Sup. Ct. R. 5A:12(c)(5)).
- The trial court did not err in denying Sanford's motion to strike two jurors. Id. at 2-5.
- Sanford did not preserve his challenge to the sufficiency of the evidence because he "failed to renew" his motion to strike at the conclusion of the evidence or to move "to set aside the verdict." Id. at 5 (citing Va. Sup. Ct. R. 5A:18).

Sanford requested review by a three-judge panel, which adopted the reasoning of the September 12, 2013 order and denied the petition for appeal on November 1, 2013.

Sanford's appellate counsel filed a petition for appeal in the Supreme Court of Virginia raising the same three assignments of error. [Dkt. 60-5]. On April 8, 2014, the court dismissed the assignment of error related to Sanford's challenge to the sufficiency of the evidence because his assignment of error did not address the Court of Appeals ruling, and it refused the remaining two assignments of error in Sanford's petition for appeal. Sanford v. Commonwealth, Record No. 131824. [Dkt. No. 60-7].

On March 15, 2015, Sanford filed a petition for a state writ of habeas corpus in the circuit court ("habeas court"), and raised the following claims:[3]

---

[3] Because Sanford labeled his claims inconsistently in his state habeas application, the trial court presented them numerically and sequentially in its Final Order. [Dkt. No. 60-9 at 2, n. 1]. The habeas court's arrangement is repeated here for clarity and ease of reference.

4

1) Petitioner's double jeopardy rights were violated as a result of the Commonwealth's misconduct, which gave rise to his motion for mistrial.

2) Counsel provided ineffective assistance by failing to provide Dr. Laura Pettler, a defense expert in bloodstain analysis and crime scene investigation, with "case files, reports, and photographs necessary to do an analysis" which would have shown a change in the flooring at the crime scene and revealed inaccuracies by the prosecution's expert.

3) Counsel made "knowing and reckless factual misrepresentations" when billing petitioner.

4) Counsel was ineffective for failing to interview and call Detective Javier Espinoza to testify regarding "potentially exculpatory information." The testimony was necessary because Espinoza "was an expert in murder cases and some police procedures were not performed."

5) Counsel was ineffective for failing to investigate and call Dr. Christopher Haus, who would have testified that Sanford "received several cuts," including one to his neck. This would have contradicted the Commonwealth's opening and closing statements and impeached the testimony of a medic concerning Sanford's state of consciousness when he arrived at the emergency room.

6) Counsel was ineffective for failing to introduce emergency room medical records to support Sanford's claim that he had been attacked.

7) Counsel was ineffective when, during opening and closing arguments, (i) he stated that Sanford had drugs in his system; and (ii) he did not state that "this crime was ... a domestic battle between two combatants with knives."

8) Counsel was ineffective for failing to present expert witness, Shawn Weiss, who would have rebutted the Commonwealth's DNA analysis.

9) Counsel was ineffective for failing to move to exclude "damaging evidence" of "contamination of two foreign DNA types."

10) Counsel was ineffective for failing to enter into evidence a note Sanford wrote regarding his "concern about imminent harm."

11) Counsel was ineffective for failing to introduce photographs taken at the crime scene of keys and Sanford's broken glasses, which would have shown that "something out of the ordinary had occurred."

12) Counsel was ineffective for failing to preserve a challenge to the sufficiency of the evidence at trial, which precluded Sanford challenging the sufficiency of the evidence on appeal.

13) Counsel was ineffective for failing to cross-examine firefighter Bruce Hagerman "about his prior testimony in a preliminary hearing." Further, counsel participated in "a deliberate act to deceive the Court" when he failed to correct the name of the firefighter "Hanson" which appears in the transcript as "Anson."

14)   Counsel was ineffective for failing "to have co-counsel present" during trial.

15)   Counsel was ineffective for failing to protect Sanford's right to a speedy trial.

16)   The prosecutor "gave false testimony" during a hearing on February 6, 2012 when she claimed that witness Leroy Nelson had "just come forth," as the prosecutor questioned Nelson a December 20, 2010 hearing.

17)   The Commonwealth relied on the testimony of Corey Ridley, which it knew to be "false."

18)   The Commonwealth withheld the following evidence in violation of Brady v. Maryland, 373 U.S. 83 (1963): "several photographs, a note found at the scene, and a witness, Leroy Nelson," medical records, "laboratory reports, case notes, bench notes, and doctor's notes," as well as "evidence concerning Petitioner's blood and burn[ed] skin being found on the victim, love sofa, and floor near the body."

19)   Appellate counsel was ineffective for failing to assert that Petitioner was denied his constitutional right to a speedy trial.

20)   Appellate counsel was ineffective for failing to argue that the Court of Appeals should review the sufficiency of the evidence under the "ends of justice" exception set forth in Rule 5A:18. Petitioner alleges he was prejudiced because the evidence was insufficient to support his conviction.

21)   Appellate counsel was ineffective for failing to raise a double jeopardy argument on appeal.

[Dkt. No. 60-9] at 2-4.

Before ruling on Sanford's habeas claims, the habeas court summarized the facts underlying Sanford's conviction.

On December 3, 2003, Petitioner was living in an apartment with his girlfriend. Towanna Brinkley. [4] Dawn Uzzle, who lived in an adjacent apartment, saw and heard Petitioner and Brinkley return home during the afternoon or early evening hours. At approximately 5:30 p.m., Uzzle heard a series of loud thumps and the muffled screaming of a woman. At the same time, another neighbor, Cynthia Jones, heard a woman screaming, "Help me, help me, help me." Uzzle also noticed that her living room closet door, which backed up to a similar closet in Petitioner's apartment, began "slamming on the hinges" as a result of the force applied on the wall from Petitioner's side of the wall.

---

[4] The footnote in the opinion reads as follows: "The crime underlying this habeas matter was committed in 2003, but was deemed a 'cold case' by the Newport News Police Department. (10/31/2012 Tr. at 383). Petitioner was tried in 2012."

6

Uzzle called 911 and watched to see if anyone would exit Petitioner's apartment, but no one did. The police soon arrived and knocked on Petitioner's apartment door, but no one responded, and they left.

Cartrell Brinkley, the victim's adult son, arrived shortly after the police had left and knocked on Petitioner's door, but no one answered. Brinkley remained in the area for "a couple of hours," and kept "going back and forth checking in," but no one responded from inside Petitioner's apartment.

Petitioner called Corey Ridley sometime after midnight and asked to repay a $40 debt. As Ridley drove toward Petitioner's apartment, Petitioner called him again. When Ridley arrived, he knocked on Petitioner's apartment door, and Petitioner opened it. The two men walked partially into the dark living room before entering the kitchen, which was only illuminated by "a little dim light." Ridley saw two twenty-dollar bills on the kitchen counter, which appeared to have blood on them. When Ridley asked about the "red spots" on the cash, Petitioner claimed he had cut his finger. Ridley knew that Petitioner shared the apartment with Towanna Brinkley, but he did not see her before leaving. When Ridley asked where Brinkley was, Petitioner claimed she was out driving Petitioner's car, but Ridley "kn[e]w for a fact that she didn't drive." Ridley estimated he was in the apartment for approximately 15 minutes before he left.

At approximately 2:20 a.m., Uzzle and Jones were awakened by the alarm of a smoke detector. Uzzle called 911 again when she heard the "blood curdling screams of a man." When Uzzle turned the lights on, she noticed smoke "everywhere" in her apartment, and relayed to the emergency dispatcher that there was also a fire in the building.

The fire department arrived at the apartment building and determined the fire was originating from Petitioner's apartment. Inside, firefighters found Petitioner sitting near the living room closet, burned and bleeding from cuts to his arms. Firefighter Bruce Hagerman discovered, and subsequent analysis confirmed, that the source of the fire originated in the master bedroom of the apartment. A mattress was standing upright on top of a box spring, and "all the fabric had been burned off the mattress." Hagerman noticed blood on a pile of sheets and clothing in the bedroom. In the bathroom, Hagerman saw "blood in the bathtub, on the ... floor, toilet, and ... sink." Hagerman then returned to the living room, where Petitioner had been discovered, and saw Towanna Brinkley with her upper body in the closet and her lower body extending into the living room. Brinkley was dead, and there was blood around and near her upper body.

As firefighters removed Petitioner from the apartment, he repeatedly said, "Let me die." Firefighter Jason Edwards assisted in transporting Petitioner to the hospital by ambulance. At the hospital, Edwards heard Petitioner twice say that someone had broken into his apartment, tried to kill him and his girlfriend, then set the apartment on fire with an accelerant. The police found no signs of forced entry, and fire investigators recovered an empty bottle of rubbing alcohol on the floor beside the bed where the fire originated.

7

Leah Bush, M.D., the Chief Medical Examiner for the Commonwealth, testified that she was a Deputy Medical Examiner in 2003 when she conducted an autopsy on Brinkley. Dr. Bush testified that Brinkley had been stabbed 11 times in her torso, seven of which were fatal. Brinkley also suffered cuts to her face and defensive wounds to her hands. Dr. Bush opined that Brinkley would have died "within minutes" of being stabbed. Brinkley also suffered no thermal injuries and had no soot in her airways, which led Dr. Bush to conclude that Brinkley died before the fire was set.

Sandy Cleary, a forensic examiner with the Newport News Police, testified that she collected and photographed evidence at Petitioner's apartment. Cleary analyzed two sets of clothes with blood on them. DNA testing demonstrated that one set of clothing, a t-shirt and jeans recovered from the master bedroom, had Brinkley's blood spattered on them. The t-shirt bore Petitioner's initials, "ALS," and the jeans contained Petitioner's identification and other personal items. DNA testing revealed the second set of clothing, a t-shirt recovered from a spare bedroom and the jeans Petitioner was wearing when he was transported to the hospital, contained Petitioner's blood, as well as Brinkley's blood.

A pair of brown sandals recovered from the master bedroom also had Brinkley's blood on the bottom and sides. The "inside" of the sandals contained a DNA mixture from both Petitioner and Brinkley. Shoe prints tracking Brinkley's blood away from her body matched the impression of the sandals.

Angela Moore, a forensic examiner with the Newport News Police, qualified as an expert in blood spatter analysis. Moore testified that the blood found in the bathroom demonstrated a "passive" drip patter, which she described as lacking "directionality." The blood found on the wall near Brinkley's body and the clothes recovered from the crime scene, however, had directionality, which would have required "some force to deposit."

Two blood-stained knives were found in Petitioner's apartment. The first knife, a "small folding buck knife," was discovered in the closet beside Brinkley's body. The second knife, "a very large knife with a large blade," was discovered inside a desk in the master bedroom. The folding knife had Brinkley's blood on it, and the "large knife" had both Brinkley's and Petitioner's blood on it. A sponge was also found in the master bedroom, which contained Brinkley's blood.

In total, more than 30 different swabs were obtained from evidence recovered at the scene. Only one swab, from a shirt, contained DNA other than that of Petitioner and/or Brinkley. The sample, however, was "so small" that it could have been "environmental contamination."

Petitioner presented his own experts in blood spatter analysis and fingerprint analysis, who testified that (i) the Commonwealth's expert's blood spatter analysis was incomplete because she did not physically examine the scene at the time of the crime; and (ii) no fingerprints were recovered from the scene of the crime. Isaiah Davis also testified on behalf of Petitioner, and claimed that Corey Ridley had told him "he had gotten himself in some trouble . . . and he was going . . . to talk to someone in law enforcement to try and make a deal to get himself out of trouble."

8

On cross-examination, Davis claimed that the conversation took place within two years of trial.

Id. at 4-8.

The habeas court dismissed Sanford's habeas petition on December 12, 2016. [Dkt. No. 60-9]. The habeas court found that Claims 1 and 3 were not cognizable in a habeas proceeding, Claims 16-18 were barred by the rule of Slayton v. Parrigan, 215 Va. 27, 30, 205 S.E.2d 680, 682 (1974), and that Claims 2, 4-15, and 19-21 did not state a claim of ineffective assistance of counsel under Strickland v. Washington, 466 U.S. 668 (1984). Sanford filed a petition for appeal in the Supreme Court of Virginia, which that court refused in a summary order on February 26, 2018.[5] [Dkt. No. 60-12] (Sanford v. Clarke, Record No. 170318).

## II. Federal Petition

On March 13, 2018, Sanford timely filed the instant § 2254 petition which raises the following claims:[6]

| | |
|---|---|
| 1(A)(i) | The trial court erred in denying his motion to dismiss which alleged double jeopardy and speedy trial violations. |
| 1(A)(ii) | The Commonwealth committed prosecutorial misconduct when it intentionally procured a mistrial during his first trial in February 2012. |
| 1(B) | The Commonwealth committed prosecutorial misconduct when it failed to stop witness Corey Ridley from testifying during the first trial that he knew of an unrelated "past killing" by Sanford. |

---

[5] Because a federal court on habeas review of a state conviction must defer to findings of fact made by state trial and appellate courts, 28 U.S.C. § 2254(d), it is appropriate to look to the state court's recitation of the salient facts. The Supreme Court of Virginia summarily refused the petition for appeal challenging the habeas court's Final Order, and, therefore, the habeas court's reasoning is imputed to the Supreme Court of Virginia. Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991).

[6] The Court adopts the respondent's numbering of Sanford's claims and sub-claims for ease of reference. In his brief, respondent explains Sanford's unlabeled grounds were labeled as sub-claims. [Dkt. No. 60] at 8, n. 5.

| | |
|---|---|
| 1(C) | The trial court "failed to consider the totality of the circumstances prior to the mistrial in determining if [Sanford's] second trial was barred by the Double Jeopardy Clause." |
| 1(D)(i) | The prosecution intentionally committed misconduct on February 7, 2012 because it needed to circumvent Virginia's speedy trial statute to better prepare its case, since it could not request another continuance. |
| 1(D)(ii) | The trial court abused its discretion in failing to consider that prosecutorial misconduct was used to gain an unfair tactical advantage over Sanford. |
| 1(D)(iii) | The state habeas court erred when it denied his motions for an evidentiary hearing and the appointment of counsel, which resulted in an unreasonable determination of the facts. |
| 2(A) | Trial counsel was ineffective because he abandoned Sanford and created a conflict of interest. |
| 2(B) | Counsel was ineffective for failing to call Dr. Christopher Haus and failing to introduce Sanford's emergency room medical records. |
| 2(C) | Counsel was ineffective for failing to investigate and to provide defense expert Dr. Pettler with crime scene photographs of "the bloody sandal prints" which did not match Sanford's pattern of walking. |
| 2(D)(i) | Counsel was ineffective for failing to exclude "the white t-shirt" which was "contaminated" and "seized without a proper warrant. |
| 2(D)(ii) | Counsel was ineffective for failing to call defense DNA expert Shaun Weiss at trial. |
| 2(D)(iii) | Counsel was ineffective for being unprepared to cross-examine the prosecution's expert regarding DNA testing. |
| 2(E) | Counsel was ineffective for failing to enter into evidence a note written by Sanford that was found at the crime scene, which would have constituted exculpatory evidence of the inadequacy of the police investigation and bolstered the defense theory of an alternative suspect. |
| 2(F)(i) | Counsel was ineffective for failing to interview and call Detective Javier Espinoza, whose testimony would have bolstered defense theories of an inadequate police investigation and a possible alternative suspect. |
| 2(F)(ii) | Counsel was ineffective for failing to preserve a challenge to the sufficiency of the evidence. |
| 3(A)(i) | Appellate counsel was ineffective for abandoning Sanford and creating a conflict of interest. |

10

| 3(A)(ii) | Appellate counsel was ineffective for failing to file a brief on the merits of Sanford's constitutional speedy trial claim, thereby waiving the issue on appeal. |
| 3(A)(iii) | Appellate counsel was ineffective for failing to "comb the trial transcripts and comply with Rule 5A:18 exceptions to file a merits brief on the sufficiency of the evidence." |
| 3(A)(iv) | Appellate counsel was ineffective for failing to argue that Sanford's double jeopardy rights were violated. |
| 4 | Sanford is actually innocent, which he has demonstrated by producing "new facts" that were not presented at trial. |

### III. Exhaustion and Procedural Default

Before bringing a federal habeas petition, a state prisoner must first exhaust his claims in the appropriate state court. See 28 U.S.C. § 2254(b). Exhaustion requires that a state prisoner "give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999). To exhaust his claims, a "petitioner must have presented to the [highest] state court 'both the operative facts and the controlling legal principles.'" Kasi v. Angelone, 300 F.3d 487, 501-02 (4th Cir. 2002) (citation omitted). It is Sanford's burden to demonstrate he has exhausted his claims. See Breard v. Pruett, 134 F.3d 615, 619 (4th Cir. 1998).

The requirement that facts be exhausted is an important aspect of exhaustion under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which limits federal habeas "review under § 2254(d)(1) ... to the record that was before the state court that adjudicated the claim on the merits." Cullen v. Pinholster, 563 U.S. 170, 181 (2011). In the Fourth Circuit, the reasonableness of a state court decision is evaluated "in light of the evidence presented in the State court proceeding." Porter v. Zook, 898 F.3d 408, 443 (4th Cir. 2018).

In addition, "[a] claim that has not been presented to the highest state court nevertheless may be treated as exhausted if it is clear that the claim would be procedurally barred under state

11

law if the petitioner attempted to present it to the state court." <u>Baker v. Corcoran</u>, 220 F.3d 276,

288 (4th Cir. 2000) (citing <u>Gray v. Netherland</u>, 518 U.S. 152, 161 (1996)). Importantly, "the

procedural bar that gives rise to exhaustion provides an independent and adequate state-law

ground for the conviction and sentence, and thus prevents federal habeas review of the defaulted

claim." <u>Id.</u> (quoting <u>Gray</u>, 518 U.S. at 162).

*A. Defaulted Claims*

Sanford failed to present to the Virginia courts the following claims or portions of claims

he raises here:

- Claim 1(A)(i): the portion in which Sanford alleges that his motion to dismiss based on his constitutional right to a speedy trial was wrongfully denied.[7]
- Claim 1(D)(i), alleging prosecutorial misconduct aimed at avoiding Virginia's speedy trial statute.[8]
- Claim 2(A), alleging a conflict of interest with trial counsel.
- Claim 2(C): the portions alleging counsel was ineffective for failing to provide Dr. Pettler with photographs of bloody sandal prints and not securing expert testimony that such prints would have explained why Sanford's blood was under the victim's fingernail.
- Claim 2(D)(i): the portion asserting that trial counsel failed to move to exclude the white t-shirt as having been seized without a warrant.
- Claim 2(D)(iii), alleging trial counsel was ineffective because he was not prepared to cross-examine the prosecution's expert on DNA testing.
- Claim 2(F)(i): the portion alleging counsel should have called Detective Espinoza as a witness so the jury could hear testimony regarding "the

---

[7] Sanford argued in his motion to dismiss before the trial court that his right to a speedy trial as guaranteed by both the Virginia statute and the federal constitution was violated. (CCT at 882-88; 888). On direct appeal, the court held that the trial court did not err in denying the motion to dismiss because the Commonwealth had not violated Sanford's state statutory speedy trial rights, and it found the issue regarding his constitutional right to a speedy trial was defaulted because the petition for appeal contained no argument related to that assertion. [Dkt. No. 60-4 at 2]. In his state habeas, Sanford challenged the denial of the motion to dismiss only on double jeopardy, rather than speedy trial, grounds. [Dkt. No. 60-8 at 3, 8-15].

[8] On direct appeal, Sanford argued only that his trial occurred outside the Virginia speedy trial period; there was no assertion that the alleged violation resulted from prosecutorial misconduct.

inadequacy of the police investigation to search for [the] missing vehicle and a possible alternative suspect."

- Claim 3(A)(i), alleging a conflict of interest with appellate counsel.
- Claim 4, alleging new evidence can establish Sanford's actual innocence.

All of these claims and portions of claims are now incapable of being exhausted because if Sanford were to return to state court to raise any of his federal claims in a habeas petition, the claims would be deemed procedurally barred as untimely and successive. Virginia's habeas statute of limitations, Virginia Code § 8.01-654(A)(2), is an independent and adequate state procedural rule that bars federal review. Walker v. Martin, 562 U.S. 307, 321 (2011) (state statutes of limitations may be an independent and adequate state law ground barring federal habeas review); Sparrow v. Dir., Dep't of Corr., 439 F. Supp. 2d 584, 587-88 (E.D. Va. 2006) (finding claims simultaneously exhausted and defaulted in federal habeas actions because claims not presented in state court would now be time barred by adequate and independent default under Virginia Code § 8.01-654(A)(2)). Likewise, Virginia's bar on successive petitions, Virginia Code § 8.01-654(B)(2), is an adequate and independent state ground that precludes review of the claims in a federal habeas proceeding. See Mackall v. Angelone, 131 F.3d 442, 446 (4th Cir. 1997). Accordingly, these claims or portions of claims are defaulted and barred from federal review. See Bassette v. Thompson, 915 F.2d 932 (4th Cir. 1990).

A portion of Claim 1(A)(ii) as well as Claim 1(B), alleging prosecutorial misconduct with respect to witnesses Leroy Nelson and Corey Ridley, are procedurally defaulted because each reiterates claims the state habeas court determined were barred by the holding of Slayton v. Parrigan. Section 2254(d) mandates that a federal court presume that a state court's finding of procedural default is correct, provided that the state court relied explicitly on procedural grounds to deny petitioner relief and that the procedural rule relied on is an independent and adequate state ground for denying relief. Ford v. Georgia, 498 U.S. 411, 423-24 (1991). The Fourth

Circuit has consistently held that "the procedural default rule set forth in <u>Slayton</u> constitutes an adequate and independent state law ground for decision." <u>Mu'min v. Pruett</u>, 125 F.3d 192, 196-97 (4th Cir. 1997). Therefore, the Virginia court's express finding that <u>Slayton v. Parrigan</u> barred review of Claims 1(A)(ii) and 1(B) of this petition also precludes federal review of those claims.

A federal court may not review a procedurally barred claim absent a showing of cause and prejudice. <u>Harris v. Reed</u>, 489 U.S. 255, 262 (1989); <u>McNeil v. Polk</u>, 476 F.3d 206, 211 (4th Cir. 2007). "'[C]ause' under the cause and prejudice test must be something external to the petitioner, something that cannot fairly be attributed to him." <u>Coleman v. Thompson</u>, 501 U.S. 722, 753 (1991) (citation omitted). To establish cause, a petitioner must "show that some objective factor external to the defense impeded [his] efforts to comply with the State's procedural rule." <u>Murray v. Carrier</u>, 477 U.S. 478, 488 (1986). The existence of cause ordinarily turns upon a showing of (1) a denial of effective assistance of counsel, (2) a factor external to the defense which impeded compliance with the state procedural rule, or (3) the novelty of the claim. See <u>Coleman</u>, 501 U.S. at 753-54; <u>Clozza v. Murray</u>, 913 F.2d 1092, 1104 (4th Cir. 1990). To show "prejudice," a petitioner must show that an alleged constitutional violation worked to his "actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." <u>United States v. Frady</u>, 456 U.S. 152, 170 (1982) (emphasis removed). A court need not consider the issue of prejudice in the absence of cause. See <u>Kornahrens v. Evatt</u>, 66 F.3d 1350, 1359 (4th Cir. 1995). In his response to the respondent's motion to dismiss [Dkt. Nos. 12, 63, and 69], Sanford does not attempt to establish cause and prejudice to overcome his default of these claims.

14

Sanford's principle argument against respondent's exhaustion claim is his assertion of actual innocence in Claim 4 of this habeas petition; however, that does not establish cause. In McQuiggin v. Perkins, 569 U.S. 383, 392 (2013), the Supreme Court held that a convincing claim of actual innocence "may allow a prisoner to pursue his constitutional claims . . . on the merits notwithstanding the existence of a procedural bar to relief." This exception applies only in a "severely confined category"—that is, cases in which reliable new evidence shows that "it is more likely than not that 'no reasonable juror' would have convicted" the petitioner had the evidence been available at trial. Id. at 395 (quoting Schlup v. Delo, 513 U.S. 298, 329 (1995)). Here, Sanford has presented no new evidence to establish his claim of actual innocence; instead, he reiterates various allegations of which he was aware at the time of trial. [Dkt. No. 1 at 46-48]. Thus, he has not satisfied the rigorous requirements of Schlup and McQuiggin, and his actual innocence claim does not enable him to obtain federal review of his procedurally defaulted claims.

### B. Non-Cognizable Claims

Respondent correctly argues that many of Sanford's claims raise arguments that are not cognizable in federal habeas proceedings. Sanford's argument in a portion of Claim 1(A)(i) that the trial court erred in denying his motion to dismiss based on Virginia's speedy trial statute does not allege a claim for which federal habeas corpus relief is available because it does not involve a violation of the U.S. Constitution or federal law. "A state prisoner is entitled to relief under § 2254 only if he is held 'in custody in violation of the Constitution or laws or treaties of the United States.'" Billotti v. Legursky, 975 F.2d 113, 119 (4th Cir. 1992) (quoting Engle v. Isaac, 456 U.S. 107, 119 (1982)). For that reason, questions of state law that do not implicate federal

rights are not cognizable on federal habeas review. Id. (citation omitted); Larry v. Branker, 552 F.3d 356, 368 (4th Cir. 2009). Therefore, this portion of Claim 1(A)(i) will be dismissed.

For similar reasons, Claim 1(D)(iii), which alleges that the state habeas court erred when it denied Sanford's motions for an evidentiary hearing and appointment of counsel, must be dismissed because it is well established that federal habeas corpus relief is not available for errors in state post-conviction proceedings. See Lawrence v. Branker, 517 F.3d 700, 717 (4th Cir. 2008); Bryant v. Maryland, 848 F.2d 492,493 (4th Cir. 1988) ("claims of error occurring in a state post-conviction proceeding cannot serve as a basis for federal habeas corpus relief").

Lastly, Sanford's assertion in Claim 4 that he is actually innocent of the crime of second-degree murder fails because it is not a freestanding claim in habeas corpus proceedings. McQuiggin, 569 U.S. at 392; Herrera v. Collins, 506 U.S. 390, 404-05 (1993) ("We have never held that [habeas relief] extends to freestanding claims of actual innocence."). Therefore, to the extent that Sanford intends Claim 4 to be such a freestanding claim, it is not cognizable or reviewable on the merits.

### IV. Standard of Review

Under the AEDPA, "a federal court may not grant a state prisoner's habeas application unless the relevant state-court decision 'was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.'" Knowles v. Mirzayance, 556 U.S. 111, 121 (2009). "AEDPA erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." Burt v. Titlow, 571 U.S. 12, 20 (2013).

AEDPA's unreasonable application of federal law standard is not the same as an incorrect application. "The question under AEDPA is not whether a federal court believes the state court's

determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." Schriro v. Landrigan, 550 U.S. 465, 473 (2007); accord Renico v. Lett, 559 U.S. 766, 772-73 (2010). That is, the state court's judgment "must be objectively unreasonable, not merely wrong; even clear error will not suffice." White v. Woodall, 572 U.S. 415, 419 (2014) (internal quotations and citation omitted); see Harrington v. Richter, 562 U.S. 86, 103 (2011) (state decision is an unreasonable application of federal law only if the state court's ruling was so "lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility of fairminded disagreement").

This "highly deferential standard . . . demands that state court decisions be given the benefit of the doubt." Renico, 559 U.S. at 773 (internal quotations and citations omitted). "The required deference encompasses both the state court's legal conclusions and its factual findings." Lenz v. Washington, 444 F.3d 295, 299 (4th Cir. 2006). "[A] determination on a factual issue made by a State court shall be presumed correct." Tucker v. Ozmint, 350 F.3d 433, 439 (4th Cir. 2003) (quoting 28 U.S.C. § 2254(e)(1)). "In reviewing a habeas petition, federal courts must presume the correctness of a state court's factual determinations unless the habeas petitioner rebuts the presumption of correctness by clear and convincing evidence." Green v. Johnson, 515 F.3d 290, 299 (4th Cir. 2008); see Schriro, 550 U.S. at 473-74. Section 2254(d)(1), as amended by AEDPA, provides for a "backward-looking . . . examination of the state-court decision at the time it was made. It follows that the record under review is limited to the record in existence at that same time— i.e., the record before the state court." Cullen, 563 U.S. at 182.

Claims of ineffective assistance of counsel are determined based on the highly demanding standard set forth for such claims in Strickland. Under Strickland, the petitioner has the burden to show both that his attorney's performance was deficient and that he was prejudiced as a result. See

Strickland, 466 U.S. at 687. Under AEPDA, federal courts apply a "doubly deferential judicial review" to "a Strickland claim evaluated under the § 2254(d)(1) standard." Knowles, 556 U.S. at 123; see also Woods v. Etherton, 578 U.S. 113, 117 (2016). Put another way, federal courts on habeas review give the benefit of the doubt to the state courts and to defense counsel. Id. "Section 2254(d) codifies the view that habeas corpus is 'a guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." Valentino v. Clarke, 972 F.3d 560, 581 (4th Cir. 2020) (citation omitted).

Strickland's first prong, the "performance" inquiry, "requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Strickland, 466 U.S. at 687. A federal court reviewing a habeas petition indulges a "strong presumption" that counsel's conduct fell within the "wide range of reasonable professional assistance." Id. at 689. The "basic lesson" of Strickland is that "judicial scrutiny" of counsel's performance must be "highly deferential." United States v. Mason, 774 F.3d 824, 828 (4th Cir. 2014) (citation omitted). Attorneys "are permitted to set priorities, determine trial strategy, and press those claims with the greatest chances of success." Id.

Strickland's second prong, the "prejudice" inquiry, requires showing that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. A reasonable probability is a "probability sufficient to undermine confidence in the outcome." Id. "The likelihood of a different result must be substantial, not just conceivable." Valentino, 972 F.3d at 580 (quoting Harrington, 562 U.S. at 86); accord Shinn v. Kayer, 141 S. Ct. 517, 523 (2020). The question is whether the state court, which has "substantial 'latitude to reasonably determine that a defendant has not [shown

18

prejudice],' still managed to blunder so badly that every fairminded jurist would disagree." Mays v. Hines, 141 S. Ct. 1145, 1149 (2021) (quoting Knowles, 556 U.S. at 123).

The two-pronged Strickland test also applies to claims of ineffective assistance from appellate counsel. Bell v. Jarvis, 236 F.3d 149, 164 (4th Cir. 2000) (en banc). An ineffective counsel claim may be disposed of on either prong of the Strickland test. See Jones v. Clarke, 783 F.3d 987, 991-92 (4th Cir. 2015); Spencer v. Murray, 18 F.3d 229, 232-33 (4th Cir. 1994).

## V. Analysis

Remaining Portions of Claims 1(A)(i), 1(C), and 1(D)(ii). In these claims, and portions of claims, which correspond to state habeas Claim 1, Sanford contends that the Commonwealth acted in bad faith to procure a mistrial and that the trial court erred in denying his motion to dismiss, which alleged that the retrial violated double jeopardy protections. Specifically, Sanford contends in Claim 1(A)(i) that the trial court erred in denying his motion to dismiss based on the violation of his double jeopardy rights. [Dkt. No. 1] at 5-6. In Claim 1(C), he alleges that the trial court erred in failing to consider that the prosecution was unprepared at the start of the first trial, as "evidenced by Cartrell Brinkley's reluctance to testify," and the Commonwealth acted in "bad faith" to "incite the mistrial." Id. at 12-13. In Claim 1(D)(ii), he claims that the trial court abused its discretion in "not applying strictest scrutiny to [the] prosecution instigating the mistrial . . . to gain an unfair tactical advantage over" him. Id. at 16.

Sanford's allegations are not borne out by the record. Cartrell Brinkley was the first witness at both the February 7, 2012 trial that ended in a mistrial and the subsequent trial that resulted in Sanford's conviction, and Brinkley testified consistently at both proceedings. [Dkt. No. 67-1] at 16-20; [Dkt. 60-23] at 35-42. In the mistrial, the Commonwealth requested a recess after opening statements in order to set up a projector and screen for use during Brinkley's

19

testimony. [Dkt. No. 67-1] at 15-16, 18. The record is devoid of any evidence to suggest that Brinkley was reluctant to testify or that the Commonwealth was unprepared during the February 7, 2012 mistrial. As to Sanford's contention that the Commonwealth intentionally solicited improper testimony from Corey Ridley to induce the mistrial, the trial court observed in denying Sanford's subsequent motion to dismiss that the prosecutor's "reaction was pretty shocked in terms of like her whole case just went away when [Ridley] said something," [Dkt. No. 20] at 5, and in connection with a later claim in the state habeas petition the same court found that "there was no evidence of prosecutorial misconduct in this case." [Dkt. No. 60-9 at 24].

Federal law recognizes "the general rule . . . that the double jeopardy clause does not bar" a second prosecution "'where circumstances develop not attributable to prosecutorial or juridical overreaching, . . . even if defendant's motion [for mistrial] is necessitated by a prosecutorial error.'" Oregon v. Kennedy, 456 U.S. 667, 670 (1982) (quoting United States v. Jorn, 400 U.S. 470, 485 (1971)). "However, retrial is barred where the error that prompted the mistrial is intended to provoke a mistrial or is motivated by bad faith or undertaken to harass or prejudice the defendant." Id. Because Sanford has not come forward with clear and convincing evidence to rebut the state court's finding that the mistrial was not procured through prosecutorial misconduct, that finding is presumed correct, Schriro, 550 U.S. at 473-74, and the determination that Sanford's right to avoid double jeopardy was not compromised when he was retried after the mistrial was consistent with this controlling federal principle. Therefore Claims 1(A)(i), 1(C), 1(D)(ii) will be dismissed. Williams, 529 U.S. at 412-13.

Claim 2(B). Sanford contends that trial counsel was ineffective for failing to call Dr. Christopher Haus to testify and for failing to introduce Sanford's emergency room records from

the night of the fire. Sanford made the same allegation in claims 5 and 6 of his state habeas petition. The habeas court found them to be without merit.

> In claim 5, Petitioner alleges counsel was ineffective for failing to investigate and call Dr. Christopher Haus, who would have testified that Petitioner "received several cuts," including one to his neck, which would have contradicted the Commonwealth's opening and closing arguments. Petitioner further claims Dr. Haus' testimony would have "impeached the testimony of firefighter/medic Edwards concerning the Petitioner's state of consciousness upon arrival to the emergency room."

> Claim 5 is without merit. Petitioner does not identify which portions of the Commonwealth's opening and closing statements Dr. Haus' testimony allegedly would have "contradicted." Similarly, Petitioner fails to describe how the outcome of his trial would have been different but for counsel's alleged "error." Conclusory allegations do not satisfy Strickland. . . .

> Regardless, the record demonstrates that firefighter Edwards testified that Petitioner twice claimed an intruder broke into his apartment, attacked him and Brinkley, and then set the apartment on fire with an accelerant. Edwards also testified he was unsure whether Dr. Haus was present during petitioner's statements; thus, Dr. Haus' testimony, at best for Petitioner, would have been silent as to Petitioner's bizarre statement about an intruder, or at worst, would have corroborated Edwards' testimony. Accordingly, Petitioner had nothing to gain and much to lose had counsel called Dr. Haus. Witness selection "is an essential part of effective representation. Here, it demonstrates that counsel [was] making strategic choices, not that [he] failed to make those choices.

> Decisions relating to witness selection are normally left to counsel's judgment, and this judgment will not be second-guessed by hindsight." Williams v. Armentrout, 912 F.2d 924, 934 (8th Cir. 1990) (en banc) (citation and quotation omitted); see also Blanco v. Singletary, 943 F.2d 1377, 1495 (11th Cir. 1991) ("The decision as to which witnesses to call is an aspect of trial tactics that is normally entrusted to counsel.") Petitioner has failed to establish either deficient performance or prejudice as required by Strickland, and claim 5 is dismissed.

> In claim 6, Petitioner alleges counsel was ineffective for failing to introduce medical records into evidence, which would have supported Petitioners claim that he had been attacked.

> Claim 6 is without merit. Petitioner fails to describe how the outcome of his trial would have been different, but for claiming that, had the jury heard evidence "that petitioner received several cuts to his body, the probability that he was . . . attack[ed] would have increased." Conclusory allegations do not satisfy Strickland. . . . Further, the record also affirmatively demonstrated that Petitioner was in "serious condition" upon his arrival at the hospital, with second and third-degree burns and lacerations. Thus, even assuming *arguendo* that counsel had

> erred, Petitioner can demonstrate no prejudice. Claim 6 fails to satisfy either prong of <u>Strickland</u>, and it is dismissed.

[Dkt. No. 60-9] at 13-14 (state citations omitted). This reasoning is imputed to the Supreme Court of Virginia, which denied further review without comment. <u>Ylst</u>, 501 U.S. at 803.

It is well settled in federal jurisprudence that "strategic choices made [by counsel] after thorough investigation . . . are virtually unchallengeable." <u>Gray v. Branker</u>, 529 F.3d 220, 229 (4th Cir. 2009) (quoting <u>Strickland</u>, 446 U.S. at 690-91). In reviewing a claim of ineffective assistance by counsel, a court must start "with the premise that 'under the circumstances, the challenged action[s] might be considered sound trial strategy.'" <u>Cullen</u>, 563 U.S. at 191. As to counsel's failure to call Dr. Haus as a witness, federal law recognizes that decisions concerning the calling of witnesses are matters of strategy left to the attorney, and generally cannot constitute ineffective assistance. <u>Jones v. North Carolina</u>, 547 F.2d 808 (4th Cir. 1977). In this case, the habeas court's order, which found Sanford would have gained nothing form Dr. Haus' testimony and at worst would have corroborated the firefighter's damaging testimony, as well as its conclusion that counsel's decision not to call Haus to testify was a sound strategic decision that did not amount to ineffective assistance, were reasonable. Similarly, the habeas court's determination that Sanford suffered no prejudice because the emergency room records were not introduced, as they would have been merely cumulative of other evidence concerning his condition, was also reasonable. See <u>Winfield v. Roper</u>, 460 F.3d 1026, 1034 (8th Cir. 2006) ("[F]ailure to present cumulative testimony is not contrary to, or an unreasonable application of, federal law . . ."). For these reasons, the habeas court's resolution of these claims was factually reasonable and in accord with controlling federal principles, <u>Strickland</u>, <u>supra</u>, and Claim 2(B) will be dismissed. <u>Williams</u>, 529 U.S. at 412-13.

22

Claim 2(C). In the portion of Claim 2(C) that was presented to the habeas court and hence is not procedurally defaulted, Sanford argues that counsel was ineffective for failing to provide Dr. Pettler, the defense expert in bloodstain analysis and crime scene investigation, with "case files, reports, and photographs necessary to do an analysis." Further, he asserts that the photographs would have shown a "change in flooring at the crime scene" which would have revealed inaccuracies in the opinion of the prosecution's expert. The habeas court rejected this argument as merely conclusory and for the following reasons:

> [T]he record, including the trial transcript, demonstrates that the Commonwealth provided Dr. Pettler with "every" photograph, the reports of its blood spatter expert, and "all" laboratory reports. The record already included numerous photographs of the crime scene, as it existed on December 4, 2003. . . . Thus, the record affirmatively demonstrates that Dr. Pettler was provided with the materials Petitioner alleges she was not.

[Dkt. No. 60-9] at 11-12.

The habeas court's conclusion that this claim failed as being both conclusory and meritless was based upon a reasonable interpretation of the record facts and was in accord with applicable federal principles. See Nickerson v. Lee, 971 F.2d 1125, 1135 (4th Cir. 1992) ("bare allegation" of constitutional error is insufficient to warrant habeas relief); Winfield, 460 F.3d at 1034 (failure to present cumulative evidence is not ineffective performance). Accordingly, Claim 2(C) will be dismissed. Williams, 529 U.S. at 412-13.

Claim (2)(D)(i). In the portion of (2)(D)(i) that was presented to the habeas court and hence is not procedurally defaulted, Sanford argues that his attorney was ineffective because he failed to move to exclude a white t-shirt recovered at the crime scene that was found to contain "environmental contamination." The habeas court deemed this argument to be "without merit" for the following reasons:

> The record, including the trial transcript, overwhelmingly demonstrated that Petitioner's and Brinkley's DNA was present throughout more than 30 samples

23

obtained from evidence recovered at the crime scene. The Commonwealth's expert conceded that one sample, from a shirt, contained DNA other than that of Petitioner and/or Brinkley. The sample, however, was "so small" that it could have been "environmental contamination." There was no such basis upon which counsel could have "moved to exclude" this sample, as it was found in Petitioner's apartment, and the expert conceded it contained no DNA from Petitioner or Brinkley; thus making it the only sample that did not incriminate Petitioner.

In any event, Petitioner fails to describe how the outcome of his trial would have been different but for counsel's alleged "error." Conclusory allegations do not satisfy <u>Strickland</u> ... Accordingly, Claim 9 fails to satisfy either prong of <u>Strickland</u>, and it is dismissed.

[Dkt. No. 60-9] at 16 (state citations omitted).[9]

The habeas court's determination that counsel did not render ineffective assistance by failing to move to exclude the t-shirt was factually reasonable and in accord with <u>Strickland</u>, <u>supra</u>. There was no legal basis upon which such a motion could have been successfully predicated, and counsel was not ineffective for failing to make a futile motion. <u>See</u> <u>Moody v. Polk</u>, 408 F.3d 141, 151 (4th Cir. 2005). Moreover, it is apparent that Sanford suffered no prejudice when the shirt with such a faint trace of DNA was admitted, given that more than 30 samples recovered from the crime scene contained DNA from Sanford and the victim. Because the state court decision was not contrary to nor an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts, Claim (2)(D)(i) will be dismissed. <u>See</u> 28 U.S.C. § 2254(d).

---

[9] Sanford argues here for the first time that the t-shirt was "seized without [a] proper warrant." [Dkt. No. 1] at 34. Because that allegation was not made in any of Sanford's state court proceedings it is procedurally barred from federal consideration. <u>Baker</u>, 220 F.3d at 288. It may explain, however, why Sanford believes counsel should have moved to exclude the t-shirt, a suggestion which otherwise is illogical.

Claim 2(D)(ii). Sanford asserts that trial counsel was ineffective for failing to call "defense DNA expert, Shaun Weiss" at trial to rebut the Commonwealth's DNA analysis. The habeas court found this claim to be "without merit:"

> Petitioner fails to proffer an affidavit from Weiss, describing what his testimony would have been. The failure to proffer an affidavit of a witness's expected testimony is fatal to a habeas claim. Morva v. Warden, 285 Va. 511, 520, 741 S.E.2d 781, 789 (2013) (affidavit required to substantiate purported witness testimony alleged by petitioner in his habeas petition). Further, other than generically stating that Weiss's purported and undisclosed testimony would have countered the Commonwealth's overwhelming DNA evidence, Petitioner fails to describe how the outcome of his trial would have been different. Conclusory allegations do not satisfy Strickland . . . Claim 8 fails to satisfy either prong of Strickland, and it is dismissed.

[Dkt. No. 60-9] at 15-16 (state citations omitted).

The foregoing holding is squarely in line with federal law, which recognizes that in general, courts "are reluctant to find ineffective assistance based upon complaints regarding uncalled witnesses." Lenz v. True, 370 F.Supp.2d 446, 479 (W.D. Va. 2005). A petitioner cannot show that he was prejudiced by the absence of a witness' testimony unless he demonstrates "not only that [the] testimony would have been favorable, but also that the witness would have testified at trial." Alexander v. McClotter, 775 F.2d 595, 602 (5th Cir. 1985). Thus, where a petitioner fails to proffer precisely what testimony a missing witness would have provided and to supply an affidavit verifying that proffer, he does meet his burden to demonstrate that counsel's performance was ineffective. See Makdessi v. Watson, 682 F. Supp. 2d 633, 654 (E.D. Va. 2010). Because the habeas court's resolution of this claim was factually reasonable and in accord with these controlling federal principles, Claim 2(D)(ii) will be dismissed. Williams, 529 U.S. at 412-13.

Claim 2(E). Sanford contends that counsel was ineffective for failing to enter into evidence a note Sanford wrote which was found at the crime scene in which he expressed his

"concern about imminent harm." He argues that this note "would have been the cornerstone of [his] case" and was "exculpatory" because it would have demonstrated "the inadequacy of the police investigation" into his purported "missing vehicle." Further, Sanford argues that counsel's alleged error "undermined the defense theory of an alternative suspect." The habeas court rejected this argument for the following reasons:

> The note [Sanford] references would have been inadmissible hearsay. Counsel was not ineffective for declining to move for its admission, as counsel is not ineffective for failing to make a futile motion.... Further, [Sanford's] theory of the case was, in part, that he was in a happy and loving relationship with Brinkley and that he had no reason to harm her. Setting aside the admissibility of the note, its content would have undoubtedly been detrimental to [Sanford's] case, and counsel made a prudent decision to avoid it.

[Dkt. No. 60-9] at 16-17 (citations omitted).[10]

Because the note to which Sanford refers constituted inadmissible hearsay, the Virginia courts' dismissal of this claim is consistent with the settled federal principle that a lawyer cannot be ineffective for failing to make a futile motion. Moody, 408 F.3d at 151. Even were that not so, the fact that the note's substance would have undermined the defense's theory of the case compels the presumption that counsel's failure to introduce it into evidence amounted to sound trial strategy. Cullen, 563 U.S. at 191. For these reasons, Claim 2(E) will be dismissed. Williams, 529 U.S. at 412-13.

Claim 2(F)(i). In the portion of this claim that is not procedurally defaulted, Sanford asserts that counsel was ineffective because he failed to call Detective Javier Espinoza as a witness. Sanford alleges that Espinoza would have testified that Sanford voluntarily "came

---

[10] It appears that in his pro se postconviction proceedings, Sanford altered his theory of the case. In a state habeas claim which he did not include in this federal petition, he alleged that trial counsel was ineffective for failing to argue in opening and closing statements that he and the decedent were "combatants" in a "domestic battle . . . with knives." [Dkt. No. 60-8] at 26.

to see him . . . two years prior to this charge" to report that "his car was being tamper[ed] with
in a harmful manner." According to Sanford, he was prejudiced because the jury did not
hear "potentially exculpatory information" from Espinoza who was "an expert in murder
cases and some police procedures were not performed." The habeas court found no merit to
this argument for the following reasons:

> Petitioner does not identify what "potentially exculpatory information"
> Espinoza possessed, nor does he identify what "police procedures were not
> performed." Additionally, and equally fatal to his claim, Petitioner does not
> describe how the outcome of his trial would have been different but for
> counsel's alleged "error." Conclusory allegations do not satisfy Strickland . . .

[Dkt. 60-9] at 12-13 (state citations omitted). Because this determination was based on a
reasonable interpretation of the facts and in accord with applicable federal principles,
Nickerson, 971 F.2d at 1135, Claim 2(F)(i) will be dismissed. Williams, 529 U.S. at 412-13.

     Claim 2(F)(ii). Sanford contends that his trial counsel was ineffective because he
failed to preserve a challenge to the sufficiency of the evidence, which precluded the
argument from being considered on direct appeal. The habeas court rejected this argument:

> Assuming *arguendo* that counsel erred in failing to renew his motion to strike
> after the conclusion of the evidence, Petitioner cannot demonstrate that he was
> prejudiced. "[T]here is no reason for a court deciding an ineffective assistance
> claim . . . to address both components of the inquiry if the defendant makes an
> insufficient showing on one." Strickland, 466 U.S. at 697. Here, the evidence
> against Petitioner was overwhelming. DNA and blood-spatter analysis
> conclusively demonstrated that Petitioner murdered Brinkley. Further,
> witnesses testified that Petitioner and Brinkley entered the apartment together
> on the afternoon of December 3, 2003, [and] that no one else entered the
> apartment before a woman screamed. At the same time, a neighbor's closet—
> located on the side of the wall of the closet where Brinkley's body was found—
> began "slamming on its hinges" as a result of the force applied from Petitioner's
> side of the wall. There is nothing in the record that demonstrates Petitioner could
> have successfully challenged the sufficiency of the evidence.

* * *

> [T]he judgment of the trial court is presumptively correct and "shall not be set aside unless it appears from the evidence that such judgment is plainly wrong or without evidence to support it." Va. Code§ 8.01-680; Pruitt [v. Commonwealth], 274 Va. [382] at 384, 650 S.E.2d [684] at 684. In conducting this review, the appellate court does not "ask itself whether *it* believes that the evidence at trial established guilt beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 318-19 (1979) (emphasis in original) (citation omitted). Rather, the relevant question is whether "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Id. (emphasis in original).

> Given the appellate standard of review and the overwhelming evidence against Petitioner, he cannot establish that he was prejudiced as a result of counsel's alleged error. A criminal defendant "'is entitled to a fair trial but not a perfect one,' for there are no perfect trials." Kirby v. Commonwealth, 50 Va. App. 691, 698,653 S.E.2d 600,604 (2007) (quoting Brown v. United States, 411 U.S. 223, 231-32 (1973)). "The essence of an ineffective- assistance claim is that counsel's unprofessional errors so upset the adversarial balance between defense and prosecution that the trial was rendered unfair and the verdict rendered suspect." Kimmelman v. Morrison, 477 U.S. 365,374 (1986). The verdict in this case was far from suspect. Accordingly, [this claim] fails to satisfy the prejudice prong of Strickland, and it is dismissed.

[Dkt. No. 60-9] at 18-20 (footnote omitted).

A federal court asked to weigh the sufficiency of the evidence to sustain a conviction must view the evidence in the light most favorable to the prosecution and must determine whether any rational trier of fact could have found the defendant guilty. Jackson, 443 U.S. at 319. On habeas review of a state conviction, the federal court is required to give deference to findings of fact made by both the state trial and appellate courts, 28 U.S.C. § 2254(d), and must confine its inquiry to whether the trier of fact made a rational decision to convict. Herrera, 506 U.S. at 402. When these standards are applied here, it is apparent based on the state courts' findings of fact that a rational jury could have determined that Sanford was guilty of the second-degree murder of Brinkley. That being so, the state court correctly found that Sanford's claim of ineffective assistance fails because he cannot show that he was

28

prejudiced by his lawyer's asserted failure to preserve the issue of the sufficiency of the evidence. Accordingly, Claim 2(F)(ii) will be dismissed. Williams, 529 U.S. at 412-13.

Claim 3(A)(ii). Sanford asserts that his appellate counsel was ineffective because he failed to file a brief on the merits of Sanford's constitutional speedy trial claim, and thereby waived the issue on appeal. The habeas court disagreed.

> Counsel's choice of which issues to raise on appeal is virtually unassailable. Jones v. Barnes, 463 U.S. 745, 751-52 (1983) (counsel cannot be found ineffective for failing to raise every non-frivolous issue identified by a defendant); Morrisette v. Warden, 270 Va. 188,191,613 S.E.2d 551,555 (2005) (citing Barnes, 463 U.S. at 751-52). While Barnes does not wholly preclude any Strickland claims based upon appellate claims, "[g]enerally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome." Smith v. Robbins, 528 U.S. 259, 288 (2000) (quoting Gray v. Greer, 800 F.2d 644, 646 (7th Cir. 1986)). Here, the issue Petitioner identifies as ignored is meritless, as defense counsel twice moved for a continuance after the February 7, 2012 mistrial. The claim's lack of merit is further corroborated by the fact that this Court twice denied Petitioner's motions to dismiss based upon both a violation of Code§ 19.2-243 and Sixth Amendment speedy-trial grounds. Claim 19 satisfies neither the performance nor the prejudice prongs of Strickland, and it is dismissed.

[Dkt. No. 60-9] at 22.

The Strickland analysis applies to claims of ineffective assistance on appeal as well as at trial. Matire v. Wainwright, 811 F.2d 1430, 1435 (11th Cir. 1987). Because "appellate counsel is given wide latitude to develop a strategy," Lovitt v. Angelone, 208 F.3d 172, 189 (2000), he or she is not required to assert every conceivable claim on appeal, and counsel's choice of which appellate issues to pursue is virtually unassailable. Jones, 463 U.S. at 751-52. Here, for the reasons explained by the habeas court, this claim satisfies neither component of the Strickland analysis, and its rejection consequently was factually reasonable and in accord with controlling federal authority. For these reasons, Claim 3 (A)(ii) will be dismissed. Williams, 529 U.S. at 412-13.

29

Claim 3(A)(iii). Sanford contends that appellate counsel was ineffective for failing to "comb" through the "trial transcripts" to find a basis on which the Court of Appeals of Virginia would review the sufficiency of the evidence under the "ends of justice" exception set out in Rule 5A:18. The habeas court found no merit to this argument, as follows:

> . . . For the reasons previously stated . . . a challenge to the sufficiency of the evidence would not have been successful on appeal because the evidence against Petitioner was overwhelming. Further, appellate counsel was not ineffective for declining to ask the Court of Appeals to apply the ends-of-justice exception. See Jiminez v. Commonwealth, 241 Va. 244, 249, 402 S.E.2d 678, 680 (1991) ("We consistently have applied the [contemporaneous objection] rule in both civil and criminal cases, including cases in which the death penalty was imposed. Indeed, it is a rare case in which, rather than invoke Rule 5:25 [the Supreme Court's equivalent of Rule 5A:18], we rely upon the exception and consider an assignment of error not preserved at trial to enable this Court to attain the ends of justice.") (citations and quotations omitted).
>
> Additionally, Petitioner fails to proffer what counsel should have argued before the Court of Appeals to warrant the rare application of the ends-of-justice exception. Conclusory allegations do not satisfy Strickland . . . Accordingly, [this claim] fails to satisfy either prong of Strickland, and it is dismissed.

[Dkt. No. 60-9] at 23 (state citations omitted).

Under Virginia law, a defendant seeking to avail himself of the ends-of-justice exception to the contemporaneous objection requirement "must affirmatively show that a miscarriage of justice has occurred, not that a miscarriage of justice might have occurred." Redman v. Commonwealth, 25 Va. App. 215, 221, 487 S.E.2d 269, 272 (1997). That principle is consistent with federal law, which recognizes a limited exception to the rule that a timely objection must be made to preserve error when "[a] plain error that affects substantial rights" has occurred. Id. (quoting Fed. R. Crim. P. 52(b)). Here, Sanford fails to proffer what counsel should have argued to satisfy the ends-of-justice exception. Moreover, given the clear finding that the evidence against Sanford was "overwhelming," the state court's determination that this claim fails to satisfy either prong of Strickland was reasonable. Accordingly,   Claim 3 (A)(iii) will be dismissed. Williams, 529 U.S. at 412-13.

30

Claim 3(A)(iv). In this claim, Sanford faults appellate counsel for failing to assign the violation of his double jeopardy rights as error on appeal. The habeas court disagreed:

> Counsel's choice of which issues to raise on appeal is virtually unassailable. Barnes, 463 U.S. at 752-53. To establish a double jeopardy violation, appellate counsel would have been required to prove that the Commonwealth improperly procured the February 7, 2012 mistrial. See Kemph v. Commonwealth, 17 Va. App. 335, 341, 437 S.E.2d 210,213 (1993). During Petitioner's February 7, 2012 trial, a Commonwealth's witness spontaneously referred to a "past killing" committed by Petitioner. (2/7/2012 Tr. at 76).
>
> Petitioner moved for a mistrial, and this Court granted the motion. (2/7/2012 Tr. at 77-78). "When the defendant's actions cause the mistrial, or when a mistrial is declared at the defendant's behest, he is not permitted to claim the protection of the double jeopardy bar." Kemph, 17 Va. App. at 340-41, 437 S.E.2d at 213. "However, when a defendant requests a mistrial because of intentional prosecutorial misconduct, the double jeopardy bar will apply." Id. at 341, 437 S.E.2d at 213. There was no evidence of prosecutorial misconduct in this case, and Petitioner's conclusory allegation of the same is insufficient. . . . In fact, trial counsel moved to dismiss the indictment based upon double jeopardy and prosecutorial misconduct, but this Court denied the motions, noting that the prosecutor appeared "shocked" by the witness's unresponsive statement. Claim 21 satisfies neither the performance nor the prejudice prongs of Strickland, and it is dismissed.

[Dkt. No. 60-9 at 23-24].

Federal law recognizes that appellate counsel is not constitutionally obligated to raise every possible claim on appeal, and failure to do so does not render counsel's performance deficient. Evitts v. Lucey, 469 U.S. 387, 394 (1985). Here, the state court determined that "there was no evidence of prosecutorial misconduct in this case," and noted that the prosecutor appeared "shocked" when the witness mentioned petitioner's prior crime. As Sanford has not presented clear and convincing evidence to the contrary, this Court must presume the correctness of that factual determination. Schriro, 550 U.S. at 473-74. Based upon that finding, an argument that Sanford's double jeopardy rights were violated when he was retried after the mistrial was declared would have been rejected. Kemph, 17 Va. App. at

31

340-41, 437 S.E.2d at 213. Accordingly, Claim 3(A)(iv) fails to satisfy either component of the <u>Strickland</u> analysis, and will be dismissed. <u>Williams</u>, 529 U.S. at 412-13.

## VI. Conclusion

For the foregoing reasons, respondent's Motion to Dismiss [Dkt. No. 58] this petition will be granted, and the petition will be dismissed with prejudice by an appropriate Order to be issued with this Memorandum Opinion.

Entered this 23rd day of August, 2023.

Alexandria, Virginia

/s/

Leonie M. Brinkema
United States District Judge